IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | | |
|---|---|---|
| AC2T, INC. D/B/A SPARTAN MOSQUITO | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Removed from the Circuit Court of Lamar County, Mississippi |
| LIGHTS ON DISTRIBUTORS, LLC. CCD WEBSTORE, LLC D/B/A THINK WEBSTORE, CARTER CUSTOM DESIGN, LLC, BRYAN CARTER, AND JOHN DOES 1-50 | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS MOTION TO DISMISS THE COMPLAINT**

NOW COME Defendants Lights On Distributors, LLC ("Lights On Distributors"), CCD Webstore, LLC, Carter Custom Design, LLC, and Bryan Carter and for their Memorandum Brief in Support of Motion to Dismiss the Complaint of AC2T, Inc. ("AC2T") show as follows:

### **INTRODUCTION**

AC2T entered into arms-length agreements with CCD Webstore, LLC, Carter Custom Design, LLC, and Bryan Carter to provide marketing services to help establish AC2T's Spartan Mosquito product line. After these entities successfully developed and executed a strategy to establish the product, AC2T's President, Jeremy Hirsch, decided he would cut them out. AC2T hired CCD Webstore, LLC's employees and contractors in violation of non-competition and non-solicitation agreements, misrepresented AC2T's profits in an attempt to underpay (or not pay) in violation of other agreements and, as is relevant here, attempted to unilaterally restrict the reseller services agreement AC2T entered into with Lights On Distributors. This lawsuit is the

1

culmination of Mr. Hirsh's attempt to "leverage" attention away from his own wrongful conduct and it is meritless.

On May 21, 2018, AC2T entered into an agreement with Lights On Distributors for Lights On Distributors to be the exclusive reseller of the Spartan Mosquito product on certain third-party marketplaces, including Amazon.[1] Section 1 of the Agreement provides as follows:

> 1. Appointment. AC2T grants to Reseller and the Reseller accepts the right to purchase Products directly from AC2T; AC2T agrees to fulfill Reseller orders so long as AC2T is paid according to terms; Reseller agrees to exclusively market, sell, and distribute the Products to End-Users located in the Territory solely on its website and any third party marketplaces such as eBay and Amazon (any others must be approved in writing from AC2T); AC2T agrees that Reseller is the exclusive third party marketplace reseller.

(Compl. Exh. A § 1).

In late 2020, AC2T changed its strategy to sell products through the AC2T website and became upset that the Amazon store run by Lights On Distributors was more prominent in Google search results for the Spartan Mosquito product than AC2T's own website. Accordingly, on October 13, 2020, AC2T sent a letter to Lights On Distributors purporting to unilaterally restrict Lights On Distributors to selling the Spartan Mosquito product on Lights On Distributors' website—and not Amazon, the world's largest online marketplace. At this point in time, Lights On Distributors had purchased from AC2T and had paid for inventory sufficient to satisfy the demand for Amazon sales of the product, which it was required to do under the Agreement. (Compl. Exh. A § 5.C). In comparison, sales through Lights On Distributors' website were negligible and would not require maintenance of inventory at the same level as required to satisfy Amazon sales.

---

[1] The United States Exclusive Internet Reseller Agreement for Third Party Marketplaces is attached to the Complaint as Exhibit A (the "Agreement").

Discussions between AC2T and Lights On Distributors regarding AC2T's attempt to unilaterally restrict the Agreement were not fruitful (and AC2T failed to purchase back or take return of inventory Lights On Distributors had purchased). So, in or about April 2021, Lights On Distributors sent AC2T a letter, formally rejecting AC2T's attempt to restrict Lights On Distributors' rights and to stick it with the inventory it purchased and paid for in contemplation of selling on Amazon. Lights On Distributors emphasized both Lights On Distributors' right to sell on Amazon and right to use AC2T's IP and represent itself as a reseller until "inventoried product has been sold, returned, or liquidated."

No business would purchase significant amounts of inventory with the right to sell on the world's largest online marketplace if there was the prospect that the manufacturer could later, unilaterally restrict sales to the distributor's relatively unknown website. And, Lights On Distributors did not agree to such a ridiculous arrangement either. Nothing in Lights On Distributors' appointment as the exclusive reseller "on its website and any third party marketplaces such as eBay and Amazon" provides AC2T the right to unilaterally alter the appointment to only Lights On Distributors' website.

And, while AC2T now claims that its October letter terminated the Agreement (which is disputed), even if this were the case, the Agreement provides Lights On Distributors the right to sell inventoried product after termination. Section 8 of the Agreement provides as follows:

> Upon expiration or termination of this Agreement, Reseller shall discontinue and abandon its use of the Licensed IP and any other AC2T intellectual property and shall cease to advertise and/or represent itself as a AC2T Reseller <u>after inventoried product has been sold, returned, or liquidated</u>.

(Compl. Exh. A § 8) (emphasis added). AC2T has no claim for breach of contract or IP infringement, and AC2T's Complaint generally fails, as Lights On Distributors is authorized by

contract to advertise, sell, and use AC2T's Licensed IP, and any other AC2T intellectual property, until the inventoried product is sold.

The rest of the Complaint asserts a dizzying array of purported facts and causes of action that do nothing other than further AC2T's and its President's, Jeremy Hirsch's, commitment to harass and "leverage" claims against Carter in relation to unrelated breaches of contract and torts committed by AC2T and Mr. Hirsch. These claims, likewise, lack merit and should be dismissed.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. To do so, a plaintiff must plead fact that "raise a right to relief above the speculative level" and "make relief plausible, not merely possible." *Mayfield v. Currie,* 976 F.3d 482, 486 (5th Cir. 2020), *quoting Benfield v. Magee,* 945 F.3d 333, 336-337 (5th Cir. 2019), *citing and quoting Twombly,* 550 U.S. at 555 and *Iqbal,* 556 U.S. at 678.

The Court need not accept as true "legal conclusions, conclusory statements, or naked assertions devoid of further factual development," *Id.* (internal quotations omitted), and is entitled to "draw on its judicial experience and common sense." *Iberiabank Corp. v. Ill. Union Ins. Co.,* 953 F.3d 339, 348 (5th Cir. 2020), *citing Iqbal,* 556 U.S. at 679 (applying the common sense standard in the context of contract interpretation). "When a plaintiff attaches documents to the complaint, courts are not required to accept the plaintiff's interpretation of those documents. If 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then

4

indeed the exhibit and not the allegation controls.'" *United States ex rel. Porter v. Centene Corp.*, 2018 WL 9866507, at *2 (S.D. Miss. Sept. 27, 2018), *aff'd sub nom. United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237 (5th Cir. 2020) (citation and quotation marks omitted).

Additionally, claims of fraud are governed by Rule 9 of the Federal Rule of Civil Procedure.[2] Rule 9 provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." As stated by the Fifth Circuit in *Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F.3d 719 (5th Cir. 2003), "[w]hat constitutes 'particularity' will necessarily differ with the facts of each case....At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Id.* at 724 (citations and quotations omitted). Where there are more than one Defendant, a plaintiff must "specifically set out each cause of action [it] is attempting to state against each Defendant, and should not simply lump all Defendants together, so that both the Court and the Defendant can discern what the actual claims are." *Alidoust v. Hancock Cty,* 2017 WL 3298682, at *5 (S.D. Miss. Aug. 2, 2017) (citation omitted).

---

[2] Because Plaintiff relies on the same alleged representations to support alleged fraud, intentional misrepresentation, negligent misrepresentation and concealment, Fed. R. Civ. P. applies to all of Plaintiff's claims. *See, e.g., Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 723 (5th Cir. 2003) ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims," *citing Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir.1997).

5

**ARGUMENT**

AC2T's scattershot, see what sticks approach to asserting claims fails for a variety of reasons, including but not limited to, being barred by the statute of limitations, violating federal pleading requirements, and failing to, otherwise, state claims upon which relief may be granted.

**I.     AC2T's Claims For Fraud, Intentional Misrepresentation And/Or Negligent Misrepresentation And Concealment Should Be Dismissed As Barred By The Statute Of Limitations, In Violation Of Rule 9, And For Failure To State A Claim.**

In its "Cause of Action A," AC2T attempts to allege a combined claim of "fraud, intentional misrepresentation and/or negligent misrepresentation and concealment." However, all of AC2T's fraud-based tort claims are barred by the statute of limitations. Mississippi Code Annotated section 15-1-49 provides a three-year statute of limitations for claims of fraud. Mississippi Code Annotated 15-1-49; *Warren v. Horace Mann Life Ins. Co.,* 949 So. 2d 770, 772 (Miss. Ct. App. 2006). All of the claims asserted in "Cause of Action A" (fraud, intentional misrepresentation, and/or negligent misrepresentation and concealment) occurred prior to and allegedly culminated in Mr. Hirsch's execution of the Agreement on May 21, 2018. Accordingly, these claims would have had to have been filed prior to May 21, 2021 as the three year period begins to run "upon the completion of the [contract] induced by the fraud." *Id.* AC2T did not file the instant complaint until June 7, 2021 *after* expiration of the statute of limitations.[3]

In addition, despite the well-established pleading requirements to plead fraud with particularity, AC2T fails to "lay out" its claims with requisite specificity. AC2T ultimately alleges as follows:

---

[3] In this respect, as AC2T has no claim for fraudulent inducement, its claims of Civil Conspiracy in "Cause of Action H," likewise, fails. *Jackson v. Monsanto Co.* (S.D. Miss. 2018) ("[c]ivil conspiracy is a derivative tort that cannot stand alone"). Likewise, its allegations of infringement based on alleged fraud in "Cause of Action E" also fail.

> Carter, acting in his individual capacity and in his capacity as member, manager, and/or officer of Lights On, Think, and CCD advised Spartan that the only way to control or limit who could sell Spartan's products on third-party online platforms and marketplaces and protect the Spartan IP that existed on the Amazon website, and any other third-party marketplace website, was to become the 'registered brand owner' on Amazon and other websites and assign the IP to authorized resellers. Carter, acting in his individual capacity and in his capacity as member, manager, and/or officer of Lights On, Think, and CCD advised Spartan that in order to do this, Spartan would need to enter into an exclusive contract with an internet third-party reseller who could then exclusively sell Spartan's products on Amazon and other internet third-party marketplaces.

(Compl. ¶ 15).

The Complaint does not allege when or where the alleged misrepresentation took place, who the alleged misrepresentations were made to, or provide any context as to how any representation was made on behalf of three different companies with different ownerships and an individual at the same time (or what each of the Defendants purportedly got out of the alleged misrepresentation). Accordingly, AC2T's allegations fail to allege fraud with particularity.

Further, to plead fraud, AC2T would need to allege "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *See Martin v. Winfield,* 455 So.2d 762, 764 (Miss. 1984).

Here, AC2T fails to allege any facts that would support reasonable reliance on the alleged misrepresentation. "Courts in Mississippi have held that where a plaintiff has an opportunity to investigate the statements upon which she allegedly relied, the plaintiff cannot be said to have reasonably relied on those statements." *Taylor v. Southern Farm Bureau Cas. Co.,* 954 So.2d 1045, 1050 (Miss. App. 2007) *citing Martin v. Winfield,* 455 So.2d 762, 765-66 (Miss. 1984).

Here, AC2T vaguely claims a representation that it needed to enter into a reseller contract to effectively police and enforce its IP rights on Amazon. AC2T makes no allegation that it did not have opportunity to investigate the alleged misrepresentation. To the contrary, the Agreement itself provides "[e]ach party hereto acknowledges that is has had ample opportunity to review and comment on this Agreement." (Compl. Exh. A § 12). AC2T has no basis to allege it relied on advice regarding intellectual property protection from companies providing marketing services, when it had the opportunity to review this purported claim with legal counsel of its choosing prior to entering into the Agreement.

AC2T's claims should be dismissed as (1) barred by the statute of limitations, (2) violating Rule 9, and, otherwise, (3) failing to allege facts plausibly support a claim of fraud.

II.     **All Of AC2T's Claims Regarding Use Of IP Or, Otherwise, Relating To Sales Post The Alleged Termination Fail Because Lights On Distributors Is Authorized To Use The IP Until Inventoried Product Is Sold, Returned, Or Liquidated.**

AC2T's alleged "Cause of Action E" (and multiple subparts) is based on the incorrect assertion that Lights On Distributors is not authorized to sell on Amazon or use AC2T IP following the alleged termination of the Agreement. Each of these allegations are directly contradicted by the Agreement, which controls over any inconsistent allegations made in the Complaint. *United States ex rel. Porter*, 2018 WL 9866507 at *2. Accordingly, each and every claim based on "lack of authority" should be dismissed.

Here, Section 1 of the Agreement appoints Lights on Distributors as the exclusive third party marketplace reseller for "eBay and Amazon." (Compl. Exh. A § 1). Upon termination, the Agreement explicitly authorizes Lights On Distributors to use AC2T's IP and advertise and represent itself as an authorized reseller until inventoried product is sold, returned, or liquidated. (Compl. Exh. A § 8) ("[u]pon expiration or termination of this Agreement, Reseller shall discontinue and abandon its use of the Licensed IP and any other AC2T intellectual property and

8

shall cease to advertise and/or represent itself as a AC2T Reseller <u>after inventoried product has been sold, returned, or liquidated</u>") (emphasis added). Both of these provisions survive any alleged termination or expiration of the Agreement. (Compl. Exh. A § 14). AC2T's claims that Lights On Distributors is not authorized to represent itself as an AC2T reseller or to use AC2T IP to sell through the inventory that it paid for under the Agreement is directly contradicted by the Agreement. The Agreement controls and all of AC2T's contrary allegations, therefore, should be disregarded.

Indeed, the crux of all of AC2T's allegations contained in "Cause of Action E" rests on the incorrect assertion that "at the termination of the Agreement, Lights On's license and authorization to use Spartan's licensed IP and Trademark . . . was terminated as it relates to internet third-party marketplaces and website." (Compl. ¶ 58). Yet, as discussed, the Agreement explicitly authorizes Lights On Distributors to advertise and sell. Accordingly, "Cause of Action E" should be dismissed. For this same reason, "Causes of Action A and B," to the extent they allege (1) unauthorized sales on internet third-party marketplaces, (2) representing that Lights On Distributors is a reseller, and (3) using AC2T's IP without authorization fail as well. (*See, e.g.,* Compl. ¶¶ 37 (b), (g), (i) and Compl. ¶¶ 40 (g), (i), (j)). And, for this same reason, "Cause of Action D," which is based on alleged "misrepresent[ion] to end users that it is an authorized reseller and manufacturer's representative of Spartan's products through internet third-party marketplaces by using Spartan's IP without authorization of license," should also be dismissed.

AC2T has and had no right to unilaterally restrict Lights On Distributors' appointment, an appointment Lights On Distributors relied upon in purchasing and paying for inventory from AC2T. Initially, Section 9 of the Agreement requires a writing to amend, modify or waive the

9

appointment (or any other provision of the Agreement). Section 9 of the Agreement provides as follows:

> 9. Amendments & Waivers. This agreement may be amended, waived, or modified only by a written instrument signed by an authorized person of both parties stating specifically that it is an amendment, waiver, or modification. Failure to enforce a provision shall not be deemed a waiver.

(Compl. Exh. A § 9). AC2T fails to allege any modification of the Agreement by written instrument. *See Heartsouth, PLLC v. Boyd,* 865 So.2d 1095, 1107 (Miss. 2003) (finding "the agreements 'Amendments' provision forbids oral modification or any changes to the contract without a written amendment signed by the parties. There has been no written amendment signed by either party; therefore there can be no amendment to the terms of the contract").

AC2T does not, otherwise, allege facts to establish a new agreement or to support modification of the Agreement, including offer, acceptance and consideration. "For a subsequent agreement to modify an existing contract, the later agreement must, itself, meet the requirements for a valid contract." *See, e.g., Continental Ins. Co. v. Transamer Rental Finance Corp.,* 748 So.2d 725, 734-35 (Miss. 1999), *quoting Singing River Mall v. Mark Fields, Inc.,* 599 So. 2d 938, 946-47 (Miss. 1992). "The formation of a contract, either oral or written, requires (1) an offer, (2) acceptance of the offer, and (3) consideration." *Scott v. Magnolia Lady, Inc.,* 843 So.2d 94, 96 (Miss. App. 2003), *citing Krebs v. Strange,* 419 So.2d 178, 181 (Miss. 1982). Even if AC2T's October letter could be construed as an offer to modify the contract, AC2T makes no allegation of fact regarding or showing acceptance of the offer, or consideration.

Accordingly, any purported modification not only violates Section 9 of the Agreement, which expressly prohibits modification without a writing, but any offer to modify the Agreement equally lacks acceptance of the offer or consideration.

**III.     AC2T Lacks Standing To Enforce Federal And State Pesticide Laws.**

"Cause of Action J" purports to state a claim for violation of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") and/or regulations implementing the act and the Mississippi Pesticide Law. "Cause of Action I," in part, attempts to allege negligence based on purported violation of these laws.

The harassing nature of these claims is borne out by AC2T's irreconcilable positions that, on the one hand, Lights On Distributors is authorized to sell the product through its website, but on the other hand, when *the exact same products* are sold on Amazon they somehow violate federal and state laws. Of course, these same products are being sold by retailers such as Tractor Supply Company and Lowes without complaint by AC2T.

Regardless, "Cause of Action J" must be dismissed as there is no private cause of action for alleged violations of FIFRA. *See, e.g., Miller v. EI Du Pont de Nemours and Co.,* 880 F. Supp. 474, 480 (S.D. Miss. 1994). Further, in *Miller*, the court concluded that because there is no private cause of action under FIFRA, alleged violations of FIFRA could not provide a basis for a claim of negligence per se. *Id.* Likewise, the Commissioner of Agriculture and Commerce is vested with enforcement authority under the Mississippi Pesticide Law and there is no private cause of action. Miss. Code Ann. § 69-23-11.

Accordingly, "Cause of Action J" and "Cause of Action I" should be dismissed.

**IV.     AC2T Fails To Allege Breach Of Contract Or Breach Of The Duty Of Good Faith And Fair Dealing/Bad Faith Or Negligence Regarding The Same.**

In "Cause Action G," AC2T attempts to allege a breach of the duty of good faith and fair dealing against all Defendants. However, AC2T fails to allege any contractual obligation or breach that could support this claim.

Initially, AC2T fails to allege a breach of good faith and fair dealing against CCD Webstore, Carter Custom Design, or Carter. AC2T alleges that inherent in the "business relationship" between these defendants and AC2T was a duty to act in good faith and to deal fairly. (Compl. ¶ 109). AC2T alleges this duty was violated "[b]y acting in a manner to fraudulently induce Spartan to enter into the Agreement." (*Id.*). However, for there to be a breach of the duty of good faith and fair dealing, there must be an underlying breach of a contract between the parties. *See, e.g., Mullen v. Nationwide Mut. Ins. Co.*, 2013 WL 228074, at *4 (S.D. Miss. Jan. 18, 2013), *quoting Daniels v. Parker & Assocs., Inc.,* 99 So. 3d 797, 801 (Miss. Ct. App. 2012) ("[T]o have a breach of the duty of implied good faith and fair dealing there must first be an existing contract and then a breach of that contract"). AC2T does not allege a contract between it and any of these defendants, much less a breach. Accordingly "Cause of Action G" should be dismissed as to each of them.

In addition, as to all defendants, AC2T's allegations concern alleged pre-contractual statements (fraudulent inducement) or purported post-termination conduct ("not abiding by the termination"). (Compl. ¶ 109). Either way, AC2T's allegations fail because AC2T does not allege an existing contract at the time of the alleged violations. *See Daniels*, 99 So. 3d at 801-802 (rejecting claim because "at the time of the alleged breach of good faith and fair dealing, the parties were no longer contractually obligated to one another").

Similarly, in "Cause of Action B," AC2T attempts to allege breach of contract. To allege breach of contract, AC2T must allege, "the existence of a valid and binding contract" and "that the defendant has broken, or breached it." *See Bus. Commc'ns, Inc. v. Banks,* 90 So.3d 1221, 1224-25 (Miss. 2012). However, not all of AC2T's allegations of breach are connected to actual, contractual obligations. For example, AC2T claims Lights On Distributors failed to adhere to

12

"specifications" for maintenance of physical inventory. (Compl. ¶ 40.c). These purported specifications, however, are found nowhere in the Agreement. For this same reason, AC2T fails to allege the source of "duty" it alleges in "Cause of Action I" with respect to storage of Spartan's products, purported overpricing, or alleged comparative advertising.

Accordingly, AC2T's claims in "Cause of Action G" and "Cause of Action B" (at a minimum with respect to Paragraph 40.c), and "Cause of Action I" should be dismissed.

## V.     AC2T Fails To Plead A Fiduciary Relationship Sufficient To Support An Accounting.

In its "Cause of Action C," AC2T seeks an accounting based on an alleged fiduciary relationship between AC2T and Lights On Distributors. In Mississippi, a fiduciary relationship may exist under the following circumstances: "(1) the activities of the parties go beyond their operating on their own behalf, and the activities for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other." *University Nursing Assocs. v. Phillips,* 842 So.2d 1270, 1274 (Miss. 2003). Here, AC2T alleges no facts as to any of these elements. Instead, AC2T's entire allegation is the conclusory statement that "Lights On was in a fiduciary relationship with Spartan by selling its products and/or through the Agreement." (Compl. ¶ 42). This allegation fails to allege plausible facts that would establish a fiduciary relationship.

"A fiduciary relationship does not ordinarily arise in an arm's length contractual agreement." *Morgan v. Green-Save, Inc.,* 2 So.3d 648, 653 (Miss. App. 2008). AC2T, in the Agreement, disclaims anything but an arm's length relationship. (Compl. Exh. A § 13) ("Relationship. Reseller and AC2T are independent contracting parties, and nothing contained in this Agreement shall be deemed to make Reseller an agent, representative, employee, partner,

joint venture, franchisee, or affiliate of AC2T"). The mere existence of a distribution agreement is insufficient to establish a fiduciary relationship. *See, e.g., Tin Originals, Inc. v. Colonial Tin Works, Inc.,* 391 S.E.2d 831, 833 (N.C. App. 1990) (rejecting that interdependence between a manufacturer and exclusive distributor created a fiduciary relationship).

AC2T's "Cause of Action C" should be dismissed for failure to state a claim.

## VI. AC2T Fails To Allege A Civil Conspiracy.

Next, AC2T's Complaint falls far short of alleging a civil conspiracy. To allege a civil conspiracy AC2T must allege facts that could establish: "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, [and] (4) ... damages to the plaintiff as a proximate result." *Bradley v. Kelley Bros. Contractors, Inc.,* 117 So. 3d 331, 339 (Miss. App. 2013). AC2T's entire allegation of conspiracy is that "Lights On, Think, CCD, and Carter conspired between themselves to misrepresent . . . [causing] Spartan to be fraudulently induced to enter the Agreement." (Compl. ¶ 111). As discussed above, because AC2T's fraud claim fails, this claim fails as well. In addition, AC2T fails to allege how each defendant purportedly agreed to the conspiracy. And, so far as AC2T claims that Carter conspired with companies he is alleged to be employed by, AC2T cannot claim conspiracy. *See Orr v. Morgan,* 230 So. 3d 368, 375 (Miss. App. 2017) ("[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation"), *quoting Nelson Radio & Supply Co. v. Motorola Inc.,* 200 F.2d 911, 914 (5th Cir. 1952).

AC2T's non-specific and vague attempt to plead conspiracy in "Cause of Action H" should be dismissed.

**VII.    AC2T Fails To Allege A Cause Of Action For Unjust Enrichment.**

Finally, AC2T fails to allege a claim for unjust enrichment. "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to whom in good conscience it ought to belong." *Dew v. Langford,* 666 So. 2d 739, 745 (Miss. 1995). Here, AC2T's allegation of unjust enrichment is nothing more than a listing of its other claims, including breach of contract. (Compl. ¶ 108) ("Lights On has been unjustly enriched by its fraud, misrepresentation, concealment, trademark infringement, unfair competition, breaches of contract, and in all other acts set for herein"). Accordingly, the unjust enrichment claim should be dismissed. *See, e.g., Da Luz v. Five Star Contractors*, 2012 WL 1070117, at *6 (S.D. Miss. Mar. 29, 2012) (dismissing unjust enrichment claim where plaintiffs were also "pursuing a breach of contract claim").

WHEREFORE Defendants Lights On Distributors, LLC, CCD Webstore, LLC, Carter Custom Design, LLC, and Bryan Carter respectfully request that AC2T, Inc.'s Complaint be dismissed for the reasons set forth herein.

Respectfully submitted, this the 8th day of July 2021.

        LIGHTS ON DISTRIBUTORS, LLC,
        CCD WEBSTORE, LLC D/B/A THINK
        WEBSTORE, CARTER CUSTOM
        DESIGN, LLC, BRYAN CARTER

By:  s/ *J. Chase Bryan*
      J. Chase Bryan (MSB 9333)

OF COUNSEL:

J. Chase Bryan (MSB 9333)
Attorney for Defendants
YOUNG WELLS WILLIAMS PA
Post Office Box 6005
141 Township Avenue
Suite 300 (39157)
Ridgeland, MS  39158
T:	601-948-6100
F:	601-355-6136
cbryan@youngwells.com

CERTIFICATE OF SERVICE

I, J. Chase Bryan, counsel for defendants hereby certify that, on this day, the above and foregoing was filed using the ECF Court filing system and by electronic mail and U.S Mail to the following counsel of record:

Seth M. Hunter
Duke Dukes & Hunter
Post Office Box 2055
Hattiesburg, MS  39403
shunter@jdukeslaw.com

DATED:  July 8, 2021.

				s/ *J. Chase Bryan*
				J. Chase Bryan