## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

AC2T, INC. D/B/A SPARTAN
MOSQUITO

        Plaintiff/Counter-Defendant,

    v.

LIGHTS ON DISTRIBUTORS, LLC.
CCD WEBSTORE, LLC D/B/A THINK
WEBSTORE, CARTER CUSTOM
DESIGN, LLC, BRYAN CARTER, AND
JOHN DOES 1-50

        Defendants/Counter-Plaintiffs/
        Third-Party Plaintiffs,

    v.

JEREMY HIRSCH, MATTHEW JACKSON,
AND JOHN DOES 1-50,

        Third-Party Defendants.

Civ. No. 2:21-cv-00093-TBM-RPM

)))))))))))))))))))))))

## <u>MEMORANDUM BRIEF IN OPPOSITION TO MOTION TO DISMISS</u>

Defendants/Counter-Plaintiffs/Third-Party Plaintiffs Lights On Distributors, LLC ("LOD" or "Lights On Distributors"), CCD Webstore, LLC ("Think" or "Think Webstore"), Carter Custom Design, LLC ("CCD"), and Bryan Carter and file this memorandum brief in opposition to the motion to dismiss [Doc 19] filed by Plaintiff AC2T, Inc. ("AC2T") and Third-Party Defendant Jeremy Hirsch (collectively "Plaintiffs") show as follows:

### INTRODUCTION

AC2T and Hirsch have filed a Motion to Dismiss the well-pleaded counterclaims of the various Defendants that (1) asks for AC2T and Hirsch to be rewarded for their bad faith conduct and further frustrate the Defendants' enforcement of their rights, and (2) argues Hirsch should

not have to answer for his tortious conduct. Otherwise, AC2T and Hirsch raise a handful of alleged pleading deficiencies. Plaintiffs' substantive arguments lack merit and, while Defendants believe they have adequately pled fraud and interference, to the extent the Court believes there are deficiencies in the Defendants' allegations, these can be cured by amendment. Accordingly, Defendants respectfully request that the Motion to Dismiss be denied in its entirety, or in the alternative, denied in part with leave to amend.

## DISCUSSION

**I.    AC2T's And Hirsch's Bad Faith Conduct Precludes Their Ability To Assert A Condition Precedent To Filing Suit On The Consulting Agreement.**

In their Motion to Dismiss, AC2T and Hirsch first claim that Count I should be dismissed or the case should be stayed because CCD and Carter did not first submit the dispute under the Consulting Agreement to mediation. (Motion to Dismiss at 4-6). The mediation provision contained in the Consulting Agreement provides for a three step process in the event the parties find themselves in a Dispute as follows:

> (1) [T]he parties hereto involved in such Dispute agree to use their best efforts to settle the Dispute. To this end, they shall consult and negotiate with each other in good faith, and, recognizing their mutual interest, attempt to reach a satisfactory solution;
>
> (2) In the event any Dispute cannot be settled pursuant to the preceding section, then, upon notice by any party to the other party(s), such dispute shall be submitted to nonbindingd [sic] Mediation; and
>
> (3) If the parties are unable to resolve their dispute through direct negotiation or mediation, then they shall have the option of resort to a court of law.

(Consulting Agreement § 12).

Plaintiffs, however, cannot object that CCD and Carter did not satisfy step two of the process, when AC2T and Hirsch failed to comply with step one. Indeed, in the face of the instant dispute and as discussed in more detail below, Hirsch first stonewalled, then filed suit himself,

denied and repudiated the agreement, refused to cooperate in any respect until counterclaims were filed, and has in this litigation continued to obstruct discovery of basic financial information.

As alleged in the Counterclaim, pursuant to the terms of the Consulting Agreement, CCD and Carter are entitled to a 2% commission (and financial reports to audit the calculation of the commission) during the term of the agreement and the purchase and redemption of a 2% interest in the value of AC2T following the termination of the Consulting Agreement. The Consulting Agreement provides for the audit of commissions as follows:

> COMPANY agrees to provide CONSULTANT with a monthly report of the applicable sales for determining CONSULTANT's commissions under this agreement during the time CONSULTANT provides the Marketing and Consulting Services....

(Countercl. ¶¶ 27, 28; Consulting Agreement § 3(f)). The Consulting Agreement further sets the method for valuing the purchase price for CCD's and Carter's 2% interest in the value of AC2T as follows:

> The purchase price for CONSULTANT's interest shall be 2% of the fair market value of the company as determined by an appraiser mutually agreed upon by the parties…"

(Countercl. ¶ 29; Consulting Agreement § 5).

On April 7, 2021, Carter requested that Hirsch provide the financial reporting necessary to calculate compensation under the Consulting Agreement. (Countercl. ¶ 67). Hirsch responded that AC2T was delayed three weeks in its financials, but would provide the information later. (Countercl. ¶ 68). He never did. (Countercl. ¶ 69). Accordingly, by letter dated April 15, 2021, CCD and Carter formally requested the information necessary to audit the compensation due under the Consulting Agreement and to value CCD's and Carter's 2% interest in the value of AC2T. (Countercl. ¶ 70). Hirsch did not respond. (Countercl. ¶ 71).

In the meantime, on June 7, 2021, Hirsch had AC2T file the instant action against all Defendants. As part of its allegations, AC2T claims obligations owed to it by CCD and Carter under the Consulting Agreement. (*See* Compl. ¶¶ 11, 12) ("CCD is also a company that was in the business of providing marketing consultation and services to Spartan.... Carter was acting Chief Marketing Office of Spartan through the relationship that existed between CCD and Spartan"); (Compl. ¶ 109) ("[i]nherent in the business relationship between Lights On, Think, CCD, Carter, and Spartan, was the duty of said Defendants to act in good faith and to deal fairly with Spartan"). Of course, in filing suit neither AC2T nor Hirsh approached CCD or Carter with a request to negotiate a dispute or participate in mediation. Instead, without any attempt at good faith consultation, Plaintiffs had Carter served at his home.

On September 2, 2021, CCD and Carter formally declared AC2T in breach and, again, requested the financial information they are entitled to under the Agreement. (Countercl. ¶ 72). Instead of using "best efforts" and acting in "good faith" to resolve the dispute, Hirsch, instead, decided he would disavow the agreement and, through counsel, asserted for the first time that he could not recall the agreement and then that the agreement was "fraudulent" (although Hirsch has yet to specify how the agreement he signed in front of a notary of the State of Mississippi is purportedly fraudulent). In his Answer to the Defendants' Counterclaims, Hirsch unequivocally adopts the position that the Consulting Agreement is "fraudulent." (*See* Nineteenth Defense) ("Spartan and Hirsch hereby plead and allege that the 'Chief Marketing and Consulting Agreement'...is fraudulent").

In addition, following the September 2, 2021 letter, Hirsch, through counsel, flatly refused to provide ANY information to CCD and Carter, asserting that without any claims pending against Plaintiffs, he had no obligation to cooperate with CCD or Carter. Indeed, in the

proposed CMO submitted to this Court Plaintiffs stated as follows: "Plaintiff contends that there is no counterclaim pending that would necessitate any disclosure of financial information and any such broad request of any financial information should be a part of formal discovery and subject to objection." In response, the Court Ordered the Defendants to Answer and file their Counterclaims. CCD has since served document requests seeking production of the financial information requested by its appraiser. As promised, in response to CCD's formal discovery requests for basic financial information, AC2T has responded with pages of objections.

Hirsch's stonewalling, filing suit against CCD and Carter, disavowing and repudiating the Consulting Agreement, and explicit refusals to cooperate unless claims were asserted defeat his current motion for the following reasons:

**First,** Plaintiffs cannot complain about alleged non-performance after they repudiated the contract. *See LeBleu v. Jim Murphy & Associates, Inc.,* 557 So.2d 526, 528 (Miss. 1990) ("This Court has repeatedly stated that a party may not defend a breach of contract action on the grounds of non-performance when the defending party has prevented performance by repudiating the contract"). After CCD and Carter declared breach, Hirsch denied and repudiated the contract. There is an unmistakable pattern with Hirsch's claiming "fraud" in connection with agreements he no longer likes. After performing under the Consulting Agreement and Reseller Agreement for years, Hirsh has now disavowed and breached his obligations under both.  To justify his malicious behavior, he now belatedly claims the Reseller Agreement is an "illegal agreement" and the Consulting Agreement is somehow a "fraudulent agreement." In any event, Hirsch's repudiation of the Consulting Agreement in the face of CCD's and Carter's breach notice prevented and excuses compliance with the dispute resolution provisions.

**Second,** AC2T filed suit against CDD and Carter first, claiming purported obligations under the Consulting Agreement without seeking to negotiate in good faith or submitting the

dispute to mediation. Hirsch's and AC2T's conduct is inconsistent with the assertion of a right to mediate and waives any attempt to enforce such a right. *See Armstrong v. Miss. Farm Bureau Cas. Ins. Co.,* 66 So.3d 188, 192 (Miss. App. 2011) ("A waiver is the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right") (internal quotations omitted); *Harrison Cnty. Commercial Lot, LLC v. H. Gordon Myrick, Inc.,* 107 So.3d 943, 953 (Miss. 2013) (finding in the context of arbitration, "[a] party may waive the right to compel arbitration where it actively participates in litigation or takes other actions inconsistent with the right to compel arbitration which substantially invoke the judicial process to the detriment or prejudice of the other party").

Similarly, AC2T and Hirsch waived mediation (and the good faith dispute resolution process in general) when Hirsch expressly stated they would not cooperate at all until counterclaims were filed and formal discovery requests were made. *Id.* By submitting a proposed CMO in this proceeding, explicitly rejecting good faith cooperation until claims were filed and demanding that any information be obtained through formal discovery processes, Plaintiffs waived any right to demand CCD and Carter participate in an alternative dispute resolution process that is explicitly premised on cooperation and good faith. Even now, after CCD has issued formal discovery requests, Plaintiffs continue to obstruct any orderly resolution of this dispute by advancing pages of frivolous objections to the production of financial information.

**Third,** mediating the parties' dispute would be futile. The parties' dispute centers, in part, on Hirsh's willful and malicious refusal to produce the financial information necessary to audit commissions and value AC2T. Hirsch has unequivocally stated that he will not produce such information outside of formal discovery. Accordingly, what exactly Hirsch believes should be subject to mediation is a mystery. Without financial information, neither commissions, nor

purchase and redemption of CCD's and Carter's 2% interest in the value of AC2T, can be resolved. It would be an exercise in futility to require Defendants to participate in a mediation for the sole purpose of listening to Hirsch continue to deny the existence of the Consulting Agreement. Hirsch has harassed the Defendants enough.

At end, and **finally,** Hirsch has done everything in his power to stonewall, delay, harass, deny, and, otherwise, prevent CCD and Carter from receiving the benefits they are entitled to under the Consulting Agreement. Hirsh's malicious and intentional conduct has been the antithesis of using "best efforts" and "negotiating in good faith," and his conduct has prevented and excuses the obligation to submit a dispute to mediation prior to filing suit. *See, e.g., Mendoza v. Comsat Corp.,* 201 F.3d 626, 631 (5th Cir. 2000) ("The doctrine of prevention . . . provides that when a promisor wrongfully prevents a condition from occurring that condition is excused"); *Cypress Springs LLC v. Charles Donald Pulpwood Inc.,* 161 So.3d 1100, 1106 (Miss. App. 2015) ("[i]f a party prevents performance of the contract by another party, then the party preventing performance cannot claim a breach of contract, but is in fact breaching the contract"); *Cooley v. Tucker,* 200 So.3d 474, 477 (Miss. App. 2016) ("[W]hen a party to a contract causes the failure of the performance of an obligation due, [he] cannot in any way take advantage of that failure...") ( *quoting* 13 *Williston on Contracts* § 39.3 (4th ed. 2013)).

CCD and Carter respectfully request that the Court deny Plaintiffs' motion so they can finally get the financial information to which they are entitled and that is necessary to audit commissions and calculate 2% of the value of AC2T.

## II. Hirsch Must Answer For The Tortious Conduct He Participated In And Directed.

Next, Hirsch argues that the Court should allow him to evade review of his conduct in this matter because (1) he is not a contracting party, and (2) there are allegedly no facts pled that

would support a piercing of the corporate veil. (Motion at 6-11). Hirsh requests that the Court

dismiss him as to the following Counts:

- Count I (Breach of Contract – Consulting Agreement by CCD and Carter against AC2T)
- Count II (Breach of Good Faith and Fair Dealing / Tortious Breach of Contract – Consulting Agreement by CCD and Carter against AC2T and Hirsch)
- Count III (Fraud / Intentional Misrepresentation/ Concealment by CCD and Carter against AC2T and Hirsch)
- Count V (Breach of Good Faith and Fair Dealing / Tortious Breach of Contract – Non-Solicitation Agreement by Think Webstore against AC2T and Hirsch)
- Count X (Breach of Good Faith and Fair Dealing / Tortious Breach of Contract – Reseller Agreement by LOD against AC2T and Hirsch); and
- Count XI (Fraud / Intentional Misrepresentation / Negligent Misrepresentation / Concealment – Reseller Agreement by LOD against AC2T and Hirsch)

### A. Hirsh's Motion as to Count I should be denied because the cause is not directed to him.

Initially, Count I is not directed to Hirsch, so his Motion to Dismiss, which misstates that

it is, should be denied.

### B. Hirsh's Motion as to Counts III and XI should be denied because he is liable for tortious conduct he authorized and participated in.

Second, Hirsch's Motion incorrectly states and is premised upon the contention that "[a]ll

of the claims against Hirsch…are actually contract and contract-related claims…." (Motion at 8).

However, Counts III and XI are fraud-based claims associated with Hirsch's intentional conduct

and lying to Defendants. Notably, Hirsh does not develop any argument as to why he cannot be

held liable for the torts alleged against him and does not cite a single case that provides that an

individual cannot be held responsible for his own commission of a tort. On the other hand, the

Mississippi Supreme Court has expressly found that "when a corporate officer directly

participates in or authorizes the commission of a tort, even on behalf of the corporation, he may

be held personally liable." *Mississippi Printing Co., Inc. v. Maris, West & Baker, Inc.,* 492 So.2d

977, 978 (Miss. 1986); *see also Bobbie Chance Robinson & Commercial Grain Mktg., LLC v. Smith (In re Smith),* 585 B.R. 359, 368 (Bankr. N.D. Miss. 2018) (applying individual liability to allegations of fraud).

In Count III, CCD and Carter allege that Hirsch made affirmative misrepresentations to them regarding AC2T's finances in that Hirsch "intentionally underreported AC2T profits by paying his wife significant sums of money in order to underpay or not pay CCD/Carter under the Consulting Agreement." (Countercl. ¶ 75). CCD and Carter allege this conduct constitutes fraud, intentional misrepresentation, and concealment as Hirsh knew the representations, *i.e.*, the statements of profit provided to CCD and Carter, were false and misleading. (Countercl. ¶ 100).

In Count XI of the Counterclaims, LOD alleges that Hirsch directly participated in fraud, intentional and/or negligent misrepresentation, and concealment by lying about the meaning of the volume commitment contained in the Reseller Agreement to induce LOD to enter into the agreement. Indeed, LOD specifically alleges that in response to a question from Carter in a May 14, 2018 email as to "[w]hat happens if we do not sell 500,000 units?," Mr. Hirsch responded that in such event "AC2T reserved the right to 'open the market' and provided an example of how AC2T may elect to terminate exclusivity in the event AC2T was not satisfied with sales." (Countercl. ¶¶ 142-144). Of course, AC2T, at Hirsch's direction, is now suing LOD for over $11,000,000, claiming that this provision has an entirely different meaning than was represented by Hirsch and was relied upon by LOD. (Countercl. ¶¶ 146-152).

These allegations sufficiently plead that Hirsch directly participated in and/or authorized the commission of the torts. *Mississippi Printing Co.,* 492 So.2d at 978. Accordingly, Defendants respectfully request Hirsch's Motion be denied as to Counts III and XI.

**C.    Hirsh's Motion as to Counts II, V, and X should be denied because, again, he is liable for the tortious conduct he authorized and participated in.**

That an individual can be held liable for tortious acts he personally directs and takes part in is equally applicable to the Defendants' claims for tortious breach of contract. *See Hart v. Bayer Corp.,* 199 F.3d 239, 247 (5th Cir. 2000) (where an individual is alleged to be the "guiding spirit" or the "central figure" in the challenged corporate activity, he can be held personally liable). Tortious breach of contract claims may be maintained against an individual for his intentional acts. *See, e.g., McCain v. Northwestern Nat. Ins. Co.,* 484 So.2d 1001, 1002 (Miss. 1986) (motion to dismissed denied where "[t]he liability sought…derived from the independent and allegedly intentional tortious conduct of the named defendants"); *Hill v. Halford,* Cause No. 1:11CV063-SA-DAS, 2012 U.S. Dist. LEXIS 145729, at *6 (N.D. Miss. Oct. 10, 2012) (motion to dismiss individual defendant denied).

In his Motion, Hirsch provides no analysis of the Defendants' claims of tortious breach of contract. "A claim for tortious breach of contract requires that a plaintiff establish that the defendant's actions in breaching the contract were the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit." *Grand Biscayne 670, LLC v. 14510 Lemoyne Boulevard, LLC,* Civil No. 1:18cv357-HSO-JCG, 2019 U.S. Dist. LEXIS 65414, at *6 (S.D. Miss. 2019). In *Grand Biscayne 670,* the court determined that allegations of (1) a demand for payment, (2) that is ignored, (3) with no justifiable reason for failure to pay and which evinces malice or gross negligence or reckless disregard for contract rights is adequate to plead tortious breach of contract. *Id.* Here, the Defendants have alleged that Hirsch acted with malice and without justification with the intent of impairing LOD, Think, CCD, and Carter from receiving the benefits that flow from their various agreements. As discussed above (and below),

Hirsch's campaign against the Defendants included his participation in actual fraud and tortious interference. At the pleading stage, the Defendants have alleged sufficient facts to plausibly allege Hirsch's liability. *Id.*

Indeed, Defendants do not simply allege isolated breaches of contract, but that Hirsch knowingly, willfully, and with malice and through deceit undertook a campaign to deny the Defendants the benefits of their contracts. He personally (1) solicited and hired Think Webstore's employees immediately after entering into non-competition and non-solicitation covenants—that he signed to avoid claims based on his prior inappropriate solicitation of Think Webstore's employees, (2) lied about the volume commitments contained in the Reseller Agreement, (3) interfered with LOD's rights under the Reseller Agreement without justification (4) intentionally interfered with LOD's sale of product on Amazon, (5) stopped providing financial information under the Consulting Agreement (and has now denied the agreement) without justification, and (6) fraudulently diverted AC2T profits to his wife to underpay or not pay under the Consulting Agreement. (Countercl. ¶ 5). The Defendants have alleged that Hirsh's conduct has been done with "the intent of impairing [the Defendants] from receiving benefits that flow from [their contracts]" and "Hirsch's conduct was prompted by an improper motive and not prompted by an honest mistake as to one's rights or duties and violates standards of decency, fairness and reasonableness." (Count II, ¶¶ 93, 94; Count V, ¶¶ 111, 112; Count X, ¶¶ 136-139). In addition, the breaches of the agreements were coupled with deceit and fraud. (*See* Counts III and XI).

Hirsch was personally involved in and directed all of these actions. The Defendants are entitled to show that Hirsch's conduct constitutes gross, callous or wanton conduct, or, if intentional, is accompanied by fraud or deceit. Hirsch simply does not care about the obligations

11

owed to the Defendants and his actions are without justification. These allegations are sufficient to allege that Hirsch is the "guiding spirit" and the "central figure" in all of the tortious conduct alleged and, otherwise, sufficient to plead tortious breach of contract. Accordingly, Defendants respectfully request that Hirsch's Motion as to Counts II, V, and X be denied.

**D.      Defendants' claims are not premised on piercing the corporate veil.**

As discussed above, Defendants' claims are premised upon Hirsh's personal involvement in and direction of the tortious conduct complained of. Nonetheless, to the extent Plaintiffs argue that allegations sufficient to pierce the corporate veil are required, Defendants have also made such allegations. Plaintiffs argue that to pierce the corporate veil, a plaintiff must allege (1) frustration of the legitimate expectations of the plaintiff regarding the entity to whom he looks for contract performance, (2) a flagrant disregard for the corporate formality by the principals of the corporation, and (3) some indication of fraud or equivalent maleficence by the corporate principals. (Motion at 6). As discussed above and further discussed below, Hirsch has personally and maliciously interfered with and frustrated the Defendants' rights under their various agreements. These actions have been coupled with fraud and other tortious conduct. (*See* Counts II, III, V, X, and XI). And, Hirsch has flagrantly disregarded the corporate form by making illicit transfers to his wife. (Countercl. ¶ 75). Gratuitous transfers to one's spouse to defraud creditors is the epitome of a disregard of corporate formalities.

**III.     CCD And Carter Adequately Plead Fraud.**

Plaintiffs next challenge Defendants' allegations of fraud under Rule 9(b), claiming that Defendants have not alleged sufficient facts to satisfy the heightened pleading standard. (Motion at 11-15).[1] However, in each of Count III and Count XI, Defendants have alleged the nine

---

[1] Given Plaintiffs' Complaint, which claims every alleged breach of contract by LOD also constitutes fraud on the part of LOD, Think Webstore, CCD, and Carter, the underlying argument that pursuing tort

elements of fraud and have further alleged the additional elements to constitute negligent misrepresentation and concealment.

**A.     CCD and Carter adequately plead fraud in Count III.**

In Count III of the Counterclaims, CCD and Carter allege fraud, intentional misrepresentation, and concealment in connection with Hirsch's transfers to his wife to underreport profits. CCD and Carter allege that "[p]rior to 2021, AC2T consistently provided information regarding its gross profits to CCD/Carter with a 2% calculation for payment under the Consulting Agreement," but that "in 2021, AC2T stopped providing this information." (Countercl. ¶¶ 65, 66). CCD and Carter allege that they later learned that Hirsch "intentionally underreported AC2T profits by paying his wife significant sums of money in order to underpay or not pay CCD/Carter under the Consulting Agreement." (Countercl. ¶ 75).

Plaintiffs assert these allegations are conclusory and CCD and Carter do not explain how they are fraudulent. To the contrary, CCD and Carter allege the financial reporting provided to them misstated profits and concealed the illicit transfers to Hirsch's wife. The financial reporting formed the basis upon which commissions were paid. How Hirsch can claim the financial reporting is not material is another mystery. In any event, CCD's and Carter's allegations satisfy the elements of pleading fraud cited by the Plaintiffs as follows:

(1)     That a party made a representation – CCD and Carter allege "[p]rior to 2021, AC2T consistently provided information regarding its gross profits to CCD/Carter with a 2% calculation for payment under the Consulting Agreement." (Countercl. ¶ 65). In this regard, CCD

---

claims in connection with what is in essence a contract claim raises an eyebrow. Plaintiffs apparently believe that the axiom what is good for the goose is good for the gander does not apply to them.

and Carter allege, "AC2T and Hirsch, acting individually and as an agent of AC2T, made affirmative representations regarding AC2T's revenues and gross profits." (Countercl. ¶ 97).[2]

(2)  The representation was false – CCD and Carter allege that these statements were false in that Hirsch "intentionally underreported AC2T profits by paying his wife significant sums of money in order to underpay or not pay CCD/Carter under the Consulting Agreement." (Countercl. ¶ 75).

(3)  The falsity was material – The statements were material in that the financial reporting formed the basis for commissions under the Consulting Agreement, (Countercl. ¶¶ 27, 28), and consequentially CCD's and Carter's "entitlement to compensation." (Countercl. ¶ 98).

(4)  The party had knowledge of its falsity – CCD and Carter allege Hirsh "made improper payments to his wife" and "did not disclose and concealed" these transfers. (Countercl. ¶ 100).[3]

(5)  The party intended that the falsity should be acted upon – CCD and Carter allege that by providing statements of profit and calculations of the 2% commission, "AC2T and Hirsch intended for CCD and Carter to rely upon the information…" (Countercl. ¶ 101).

(6)  The hearer was ignorant of the falsity – CCD and Carter allege that they were ignorant of the diversion of funds to Hirsch's wife," (Countercl. ¶ 102), and consequently the falsity of the commission statements.

---

[2] AC2T and Hirsh further contend that CCD and Carter have not stated when the financial reporting was made. (Motion at 13). To the contrary, CCD and Carter alleged that AC2T and Hirsch made the financial reporting as required pursuant to the Consulting Agreement for the periods "[p]rior to 2021." (Countercl. ¶ 65).

[3] In this regard, CCD and Carter have also pled the additional elements of concealment in that AC2T and Hirsh failed to disclose the transfers to Hirsch's wife and the underreporting of profits in the face of a contractual obligation to truthfully report gross profits for the purpose of calculating commissions.

(7)     The hearer relied on its truth – CCD and Carter allege they "relied on the information provided by AC2T and Hirsch." (Countercl. ¶ 103).

(8)     The hearer had a right to rely on the falsity – The Consulting Agreement provides that AC2T would provide the financial statements for the explicit purpose of calculating commissions. (Countercl. ¶¶ 27, 28). Accordingly, CCD and Carter were entitled to rely upon the financial information provided. (Countercl. ¶ 104).

(9)     The hearer's consequential injury – CCD and Carter claim that as a result of the false statements, they were underpaid or not paid and consequently and proximately damaged. (Countercl. ¶¶ 75, 105).

CCD and Carter have adequately alleged fraud, intentional misrepresentation and concealment. Accordingly, CCD and Carter respectfully request the Court deny Plaintiffs' Motion to Dismiss Count III.

**B.     LOD adequately pleads fraud in Count XI.**

Similarly, LOD adequately pleads fraud in Count XI of the Counterclaims.

(1)     That a party made a representation – CCD and Carter allege that "[p]rior to entering into the Reseller Agreement, LOD estimated the amount of sales of product it expected to make," but Hirsh "believed that LOD's estimates were low and inserted a 500,000 unit sales commitment for the first year…" (Countercl. ¶ 142). Given this volume was more than LOD expected to sell in the first year, it is understandable that "[i]n a May 14, 2018 email from Carter to Hirsch, Carter specifically asked '[w]hat happens if we do not sell 500,000 units?'" (Countercl. ¶ 143). Hirsch responded that "in such event AC2T reserved the right to 'open the market' and provided an example of how AC2T may elect to terminate exclusivity in the event

AC2T was not satisfied with sales." (Countercl. ¶ 144). "At no point did Hirsh or AC2T state any other consequence of not selling 500,000 units." (Countercl. ¶ 145).[4]

        (2)      The representation was false – CCD and Carter allege that Hirsch's statement was false in that he later would claim the provision had an entirely different meaning. (Countercl. ¶ 146, 148).

        (3)      The falsity was material – The statement was material in that "LOD required explanation of the provision before it would enter into the Reseller Agreement and would not have entered into the Reseller Agreement had Hirsch told the truth." (Countercl. ¶ 147).

        (4)      The party had knowledge of its falsity – LOD alleges that "Hirsh and AC2T knew the representation was false and that they would later claim that the provision had a different meaning than what was represented…," (Countercl. ¶ 148), which is exactly what Hirsch did in an attempt to intimidate LOD as soon as LOD asserted its rights under the Reseller Agreement.[5]

        (5)      The party intended that the falsity should be acted upon – The representation was made in connection with entering into the Reseller Agreement and, in fact, induced LOD to enter into the Agreement with the volume provision. (Countercl. ¶¶ 147-149).

        (6)      The hearer was ignorant of the falsity – Again, LOD entered into the Reseller Agreement with the volume provision based on the representation made by Hirsch and would not have done so if it had known Hirsch was secretly harboring a different meaning. (Countercl. ¶ 147). LOD has alleged it was "ignorant of the falsity." (Countercl. ¶ 150).

---

[4] Here, LOD has also pled the additional element of concealment in that AC2T and Hirsh failed to disclose any interpretation of the volume provision other than it being tied to exclusivity.

[5] This allegation is further sufficient to allege negligent misrepresentation as Hirsch did not exercise any degree of care in making the representation. Here, it is immaterial if Hirsch knowingly or recklessly made the representation as intent to deceive may be inferred from reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation. *See In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005) (quotations and citations omitted).

(7)     The hearer relied on its truth – Similarly, LOD relied on the truth of the representation, (Countercl. ¶ 151), and would not have entered into the agreement if it had known of Hirsch's deception. (Countercl. ¶ 147).

(8)     The hearer had a right to rely on the falsity – LOD alleges that at all relevant times Hirsch was the Chief Executive Officer of AC2T. (Countercl. ¶ 7). As such, Hirsch had the authority to speak on behalf of AC2T and to bind AC2T. Accordingly, LOD had a right to rely upon the statements made by Hirsch.

(9)     The hearer's consequential injury – LOD has alleged that it has been consequently and proximately damaged, (Countercl. ¶ 152), and has requested compensatory damages, disgorgement of profits and unjust enrichment, and attorneys' fees. (Count XI, prayer for relief). Among these damages, LOD is being forced to defend and incur attorneys' fees as a direct result of AC2T's and Hirsch's fraudulent conduct. These damages are a direct result of the fraud and properly considered an element of damages. *Yeager v. Brand,* NO. 4:17-CV-168-DMB-JMV, 2018 U.S. Dist. LEXIS 167848, at *16 (N.D. Miss. Sept. 28, 2018) ("fees are properly considered an element of damages when…the fees are a natural consequence of the underlying action"); *see also Grisham v. Hinton,* 490 So.2d 1201, 1205-06 (Miss. 1986).

CCD and Carter have adequately alleged fraud, intentional and/or negligent misrepresentation and concealment. Accordingly, CCD and Carter respectfully request the Court deny Plaintiffs' Motion to Dismiss Count III.

## IV.     LOD Has Adequately Pled A Contract With Amazon.

Lastly, Plaintiffs argue that LOD has failed to allege tortious interference in connection with Hirsch's false complaints to Amazon because LOD has not alleged a "shared enforceable agreement" between LOD and Amazon. (Motion at 16). However, LOD, in fact, alleged "[a]t all

relevant times, LOD had a contractual relationship with Amazon to create listings and sell products on the Amazon platform." (Countercl. ¶ 128). LOD further alleged "AC2T and Hirsch were aware of LOD's contractual relationship with Amazon." (Countercl. ¶ 129). It is common knowledge and common sense that Amazon does not allow people to sell on its platform without a contract. It is unclear what more Plaintiffs believe LOD must allege.

While LOD asserts it has properly alleged a contractual relationship with Amazon, if LOD must further allege that Amazon will not allow a person or entity to sell on Amazon without a contract or specify Amazon's publicly available terms and conditions, this alleged defect in pleading can be easily overcome by amendment. Accordingly, Hirsch's Motion in this respect is really a request for further delay and not for resolution.

LOD has pled a contractual relationship with Amazon. Accordingly, LOD respectfully requests the Court deny Hirsh's Motion to dismiss Count IX.

## V.   Any Pleading Deficiency May Be Corrected By Amendment.

Defendants maintain they have adequately pled all causes stated in their Counterclaims. However, to the extent the Court determines any particular deficiency in pleading, such deficiency can be corrected by amendment. Accordingly, to the extent the Court determines a pleading deficiency, Defendants respectfully assert no factors militate against allowing amendment and request leave to amend pursuant to Fed, R. Civ. P. 15(a). *See Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 864 (5th Cir. 2003) *quoting and citing Foman v. Davis,* 371 U.S. 178, 182 (1962) (absent factors of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the

amendment...the leave sought should, as the rules require, be freely given" (internal quotations and citation omitted).

WHEREFORE Defendants/Counter-Plaintiffs/Third-Party Plaintiffs Lights On Distributors, LLC, CCD Webstore, LLC, Carter Custom Design, LLC, and Bryan Carter respectfully request that Plaintiffs' Motion to Dismiss be denied in its entirety or, in the alternative be denied in part with leave to amend.


Dated:  February 18, 2022

LIGHTS ON DISTRIBUTORS, LLC,
CCD WEBSTORE, LLC D/B/A THINK
WEBSTORE, CARTER CUSTOM
DESIGN, LLC, BRYAN CARTER

By:  s/ *J. Chase Bryan*
      J. Chase Bryan (MSB 9333)

OF COUNSEL:

J. Chase Bryan (MSB 9333)
Attorney for Defendants
YOUNG WELLS WILLIAMS PA
Post Office Box 6005
141 Township Avenue
Suite 300 (39157)
Ridgeland, MS  39158
T:    601-948-6100
F:    601-355-6136
cbryan@youngwells.com


George Spatz, Esq.
Amin Talati Wasserman LLP
100 South Wacker Drive, Suite 200
Chicago, IL 60606
gspatz@amintalati.com

<u>CERTIFICATE OF SERVICE</u>

I, J. Chase Bryan, counsel for defendants/counter-plaintiffs/third-party plaintiffs hereby certify that, on this day, the above and foregoing was filed using the ECF Court filing system and by electronic mail to the following counsel of record:

Seth M. Hunter
Duke Dukes & Hunter
Post Office Box 2055
Hattiesburg, MS  39403
shunter@jdukeslaw.com

DATED:  February 18, 2022.

s/ <i>J. Chase Bryan</i><br>J. Chase Bryan