UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| AC2T, INC. D/B/A SPARTAN MOSQUITO | PLAINTIFF/ COUNTER-DEFENDANT |

V.                                    CIVIL ACTION NO. 2:21-cv-00093-TBM-RPM

| | |
|---|---|
| LIGHTS ON DISTRIBUTORS, LLC, CCD WEBSTORE, LLC D/B/A THINK WEBSTORE, CARTER CUSTOM DESIGN, LLC, BRYAN CARTER, AND JOHN DOES 1-10 | DEFENDANTS/ COUNTER-PLAINTIFFS/ THIRD-PARTY PLAINTIFFS |

V.

| | |
|---|---|
| JEREMY HIRSCH, MATTHEW JACKSON, AND JOHN DOES 1-50 | THIRD-PARTY DEFENDANTS |

### AC2T, INC. D/B/A SPARTAN MOSQUITO'S AND JEREMY HIRSCH'S MEMORANDUM BRIEF IN SUPPORT OF ITS REPLY TO DEFENDANTS' RESPONSE TO MOTION TO DISMISS [DKT. 26]

COME NOW, Counter-Defendant AC2T, Inc. d/b/a Spartan Mosquito ("Spartan") and Third-Party Defendant Jeremy Hirsch ("Hirsch") and file and submit this, their Memorandum Brief in Support of their Reply to Counter-Plaintiffs'/Third-Party Plaintiffs', Lights On Distributors, LLC's ("LOD"); CDC Webstore, LLC's d/b/a Think Webstore ("Think"); Carter Custom Design, LLC ("CCD"); and Bryan Carter's ("Carter") Response to Motion to Dismiss, and in support thereof state as follows:

### INTRODUCTION

1.  Counter-Plaintiffs' Counterclaim and Third-Party Complaint (hereinafter collectively "Counterclaim") filed in this matter contain several counts that should be dismissed for failure to state a claim upon which relief may be granted in accordance with Fed. R. Civ. P. 12(b)(6). Counter-Plaintiffs attempt to ignore a condition precedent included in a contract sued

upon by Counter-Plaintiffs; attempt to impose liability on Hirsch, individually, despite Hirsch acting only as a disclosed agent of Spartan; insufficiently pleads fraud; and further fails to state a claim upon which relief can be granted on Counts I, II, III, V, IX, X, and XI of the Counterclaim.

2.     Counter-Plaintiffs allege facts in their Response that go well beyond the pleadings in an attempt to survive the Motion to Dismiss filed by Plaintiff/Counter-Defendant, AC2T, Inc., d/b/a Spartan Mosquito ("Spartan").  Regardless of the attempted insertion of these factual issues into this proceeding, the Counterclaim, on its face, fails to properly state several claims upon which relief may be granted, and must be dismissed.

3.     Spartan's and Hirsch's Motion to Dismiss Counts I, II, III, V, IX, X, and XI of Defendants' Counterclaim and Third-Party Complaint should be granted as more fully explained hereinbelow.

## II. ARGUMENT

4.     "When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint along with any documents attached to the complaint, or documents attached to the motion to dismiss, if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Griffin v. HSBC Mortg. Servs.*, 2016 U.S. Dist. LEXIS 35255, *5 (N.D. Miss. 2016) (citing *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216-17 (5th Cir. 2014)).

5.     Counter-Plaintiffs' Counterclaim fails to state a claim upon which relief may be granted in Counts I, II, III, V, IX, X, and XI.  The Response to the motion to dismiss relies heavily on facts and arguments not included in the Counterclaim or the supporting documents attached thereto.  At the motion to dismiss stage, only the allegation of the Counterclaim should be considered.

6. First, Counter-Plaintiffs argue the bad faith conduct of Spartan and Hirsch essentially amounts to waiver of a condition precedent and further attempts to allege facts not included in the Counterclaim. Next, Counter-Plaintiffs argue that Hirsch is individually liable for tortious conduct while serving in his capacity as a corporate representative and related to breach of contract claims. While individuals that engage in certain tortious acts in the course and scope of employment may be individually liable for such conduct, the conduct alleged must be exceptional. Hirsch was not a party to any of the contracts and cannot tortiously breach a contract to which he is not a party. Here, the conduct alleged by Counter-Plaintiffs does not suffice to state a claim upon which relief may be granted against Hirsch, individually. Further, the allegations in the Counterclaim fail to meet the heightened pleading standard required for allegations of fraud. Lastly, Counter-Plaintiffs rely on "common knowledge and common sense" in support of the existence of a contract Spartan and Hirsch allegedly tortiously interfered with and caused damages, but fail to sufficiently plead a claim upon which relief may be granted.

7. Spartan and Hirsch's Motion to Dismiss should be granted, accordingly.

**A.   The mandatory language in the claimed "Chief Marketing and Consulting Agreement" requires mediation as a condition precedent to litigation which has not been satisfied requiring dismissal of Counts I and II.**

8. A party may, and affirmatively must, generally aver that all conditions precedent have been satisfied in its complaint. *EEOC v. Temps. Inc.*, 679 F. 3d 323, 332 (5th Cir. 2021) (citing Fed. R. Civ. P. 9(c)). Failure to satisfy a condition precedent may be raised in an answer or by motion. *Id.* (citing *Associated Mech. Contractors, Inc. v. Martin K. Eby Constr. Co.*, 271 F.3d 1309, 1317 (11th Cir. 2001)). It is undisputed that the Counter-Plaintiffs failed to plead that the mediation condition precedent was satisfied prior to initiating litigation.

9. While there is a dearth of case law regarding mediation as a condition precedent to

litigation, a United States District Court for the Eastern District of Wisconsin dealt with a factually similar scenario to the case *sub judice* and dismissed a lawsuit until the parties mediated their disputes. *A. Raymond Tinnerman Manufacturing, Inc. v. Tecstar Mfg. Co.*, Case No. 11-C-0987 (E.D. WI 2012). In *Tecstar*, the contract central to the parties' dispute contained a mediation clause, which mandated mediation prior to initiating ligation. *Id.* Tecstar filed an answer and motion to dismiss based on Tinnerman's failure to comply with the mediation clause. *Id.* Tinnerman argued that the mediation would have been futile, and as such, the condition precedent did not warrant dismissal. *Id.*

10.     The court held the mediation clause required mediation <u>prior</u> to initiating any litigation. *Id.* Tinnerman's argument that futility of mediation excused the contractual language was completely unsupported by case law. *Id.* The court further held that even despite Tecstar's position that it would pay nothing, prior to Tinnerman filing suit, the purpose of mediation is to help parties reach a compromise. *Id.* The court dismissed the lawsuit, without prejudice, until after the parties entered into mediation, due to condition precedent in the contract requiring mediation prior to initiating any litigation. *Id.*

11.     The claimed "Chief Marketing and Consulting Agreement" undoubtedly contains a mediation clause with mandatory language creating a condition precedent to litigation. ECF [14-1, ¶ 12]. The controlling language of the mediation clause states, "upon notice by any party to the other party(s), such Dispute **shall** be submitted to nonbindingd (sic) Mediation." ECF [14-1, ¶ 12] (emphasis added). An unsuccessful mediation of a dispute related to the "Chief Marketing and Consulting Agreement" then provides the parties the "the option of resort to a court of law." ECF [14-1, ¶ 12].

12.     Counter-Plaintiffs' argument that mediation would have been futile does not excuse

the condition precedent. The *Tecstar* opinion and analysis of a mediation clause is factually similar to the instant action. The purpose of mediation is to seek a resolution outside of litigation. Counter-Plaintiffs failed to mediate the dispute related to the "Chief Marketing and Consulting Agreement." Allegations of futility, even taken as true, do not render the mediation clause meaningless. Rather, an inability to resolve a dispute requires mediation prior to initiating litigation.

13. Of course, all of this it notwithstanding the facts that, (1) Spartan requested a copy of the "Chief Marketing and Consulting Agreement" from CCD and Carter in writing on at least four occasions and over the course of five months before CCD and Carter provided a copy, (2) Spartan has serious concerns about the legitmacy of the agreement provided, (3) the quarterly earnings documents requested by CCD and Carter are irrelevant because Spartan stopped manufacturing and selling the Mosquito Eradicators, the basis of the quarterly net profits payments, in 2020, (4) Spartan requested CCD and Carter enter into mediation prior to the original Complaint and again prior to the Counterclaim being filed by CCD and Carter, and (5) there is no condition precedent of providing documents to the condition precedent of mediation.[1] Additionally, the Counter-Plaintiffs' argument regarding discovery responses of Spartan is a red herring. First, many of the requests are absolutely objectionable and second, notwithstanding Spartan's objections, Spartan intends to produce many documents requested once the Court enters an Agreed Protective Order that has been submitted to the Court.

14. Additionally, the argument that Spartan, "cannot complain about alleged non-performance after they repudiated the contract" is misplaced. Mississippi case law holds that an

---

[1] Spartan requested a copy of the "Chief Marketing and Consulting Agreement" in writing on April 21, 2021, June 8, 2021, August 27, 2021, and September 7, 2021. The agreement was also requested in a telephone conversation at least once on September 2, 2021. A copy of an alleged agreement was finally provided on September 21, 2021. Spartan requested mediation in the June 8, 2021 correspondence.

5

innocent party has an obligation to repudiate a contract promptly upon discovery of fraudulent representation or be bound by ratification and waiver. *Gardner v. Little*, 775 So. 2d 1293, 1276 (Miss. Ct. App. 2000). Spartan has made allegations of fraud related to the "Chief Marketing and Consulting Agreement," which then required repudiation by Spartan upon learning of the fraud. This does not excuse the condition precedent. However, whether or not repudiation occurred is irrelevant to the fact that the Counter-Plaintiffs, who assert the validity of the "Chief Marketing and Consulting Agreement," failed to plead the fulfillment of the mediation condition precedent- which is the standard required at this juncture.

15. Counter-Plaintiffs next argue that Spartan initiated litigation and effectively waived the right to compel mediation. The "Chief Marketing and Consulting Agreement" was not included in the initial Complaint. Spartan did not allege any claims or breaches related to the "Chief Marketing and Consulting Agreement." The contract sued upon in Spartan's initial complaint, the Reseller Agreement, did not include a similar mandatory mediation clause as a condition precedent to initiating litigation. Counter-Plaintiffs initiated litigation concerning the claimed "Chief Marketing and Consulting Agreement" with their December 3, 2021 Counterclaim. Thus, Spartan and Hirsch have not taken an inconsistent position.

16. Allegations of futility do not invalidate alternative dispute resolution clauses which are conditions precedent to initiating litigation. Such a holding would render alternative dispute resolution clauses meaningless. The purpose of mediation is to bring the parties together to discuss a compromise. Not all disputes are resolved through mediation. The undisputed fact remains that the claimed "Chief Marketing and Consulting Agreement" contains a provision requiring mediation prior to initiating litigation. The Counter-Plaintiffs failed to plead that this condition precedent was fulfilled and mediation did not occur.

17.     Lastly, as the United States District Court for the Eastern District of Wisconsin held in *Tecstar*, even absolute refusals by a party to compromise do not excuse mandatory mediation as a condition precedent to litigation.  Inability to compromise, regardless of the positions of the parties, requires mediation.  The clear language of the claimed "Chief Marketing and Consulting Agreement" requires the parties to submit to mediation prior to initiating litigation and Counter-Plaintiffs' claims related thereto in Counts I and II must be dismissed.[2]

18.     Should the Court determine not to dismiss the claims of Count I and Count II, then Spartan and Hirsch would alternatively ask that the Court submit all claims of this matter to mediation.

19.     Spartan's Complaint (and now the Amended Complaint) and the Counter-Plaintiffs' Counterclaim involve several agreements, including, the claimed "Chief Marketing and Consulting Agreement" between CCD, Carter and Spartan, the "United States Exclusive Internet Reseller Agreement for Third Party Marketplaces" between LOD and Spartan, the "Client Non-Solicitation Agreement" between Think Webstore and Spartan, and the "Business Protection Agreement" between Think Webstore and Matthew Jackson.  The issues in this case, and among the various parties, arise largely in relation to these agreements.  Therefore, the Court, for purposes of efficiency and economy, is alternatively respectfully requested to order all claims among all parties to mediation.  *L.U.C.R. 83.7 Alternative Dispute Resolution.*

---

[2] The condition precedent dismissal argument was not applied to Count II in Spartan and Hirsch's original Motion and Brief.  However, if the Court grants relief to Spartan and Hirsch as to Count I, relief must necessarily be granted on Count II since Count II, the breach of the duty of good faith and fair dealing and tortious breach of contract claims against Spartan and Hirsch, arise out of the alleged breach of the allaged "Chief Marketing and Consulting Agreement" set forth in Count I.

> **B.      Individuals acting in the course and scope of their employment are not subject to individual liability unless the tortious conduct is exceptional and Counts II, II, V, X and XI against Hirsch should be dismissed.**

20.     "[A]n agent of a disclosed principal is not a party to his principal's contract and cannot be liable for its breach." *Johnson v. Rimes*, 890 F. Supp. 2d 743, 745 (S.D. Miss. 2012). An agent or officer of a corporate entity cannot incur personal liability "absent fraud or other equivalent conduct." *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1047 (Miss. 1989) (citing *Gardner v. Jones*, 464 So. 2d 1144, 1151 (Miss. 1985)). The Mississippi Supreme Court held in *Gray* that, like courts of many other states, the law of Mississippi dictates "the corporate fiction will not be disregarded in cases of simple negligence." *Id.* (citing *Kaites v. Dept. of Environmental Resources*, 108 Pa. Commw. 267 (1987)). Liability of a corporation in a breach of contract claim does not extend to individuals acting on behalf of the corporation absent exceptional conduct, such as fraud. *Id.* (citing *Grayson v. Nordic Construction Co., Inc.*, 22 Wash. App. 143 (1978)).

21.     The Mississippi Court quoted Fletcher Cyc. Corp. § 41.85 (perm.ed. 1983):

> The attempt to hold another party liable where the claim asserted is of contractual origin presents difficulties. The question which must be met and answered is why one who contracted with a selected party and received the promise he bargained for should be allowed to look to another merely because he is disappointed in the selected party's performance. The answer under contract law is that he may not hold the other liable without additional compelling facts.

*Id.* This limitation on liability includes officers or principal shareholders engaged in the daily operations of the corporation, owners of a corporation, or individuals exercising control of a corporation. *Id.* (citing *Amason v. Whitehead*, 186 Ga. App. 320, 367 (1988)).

22.     Imposition of liability of a corporation's agents or officers requires a piercing of the corporate veil. *Id.* Under Mississippi law, a party attempting to pierce the corporate veil must show:

>  (a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder. *Id.* (citing *T.C.L., Inc. v. Lacoste*, 431 So.2d 918, 922 (Miss.1983); *Thames & Co. v. Eicher*, 373 So.2d 1033, 1035 (Miss.1979)).

23. Counter-Plaintiffs misstate the law and argue that *any* alleged tortious act by a corporate officer provides an avenue for individual liability. Such is not the case. The law requires something more than mere negligence. Rather, the conduct must rise to the level of gross malfeasance, fraud, or other exceptional conduct. At no point did Hirsch act in his individual capacity, but instead executed the contracts at issue in his capacity as a disclosed agent for Spartan. A breach of contract claim, where the parties to the contract at issue are corporations, limits liability to the contracting corporate parties. This remains true, unless there are allegations of extreme conduct, which require specially pled facts. While Counter-Plaintiffs claims include allegations of fraud, those allegations are covered in the following sections and are also due to be dismissed.

24. Counter-Plaintiffs' claims directed at Hirsch, individually, involve the claimed "Chief Marketing and Consulting Agreement" and the "Client Non-Solicitation Agreement." Hirsch is not a party to these contracts. The contracts were signed by Hirsch in his capacity as a disclosed agent for Spartan. Labeling a claim as a tort does nothing to negate the bar against personal liability of an agent acting in a corporate capacity.

25. The allegations of the Counterclaim fail to sufficiently plead facts required to pierce the corporate veil. Mississippi law is clear that to impose individual liability on an individual, a plaintiff must pierce the corporate veil. Counter-Plaintiffs' expressly stated the claims are not based on piercing the corporate veil. ECF [27], ¶ D. The corporate fiction must not be disregarded. Counter-Plaintiffs' claims against Hirsch, individually, must be dismissed.

    **C.**    **Individual Defendant, Hirsch, was not a party to any contract made subject of this action, and therefore cannot breach, tortiously breach, or breach any duties of such contracts and, again, and Counts II, II, V, X and XI against Hirsch should be dismissed.**

26.    The essential elements to a breach of contract claim are "'(1) the existence of a valid and binding contract,' and (2) a showing 'that defendant has broken, or breached it.'" *Lee Swimming Pools, LLC v. Bay Pool Constr., LLC*, 2020 US Dist. LEXIS 75166, *4 (S.D. Miss. 2020) (quoting *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018)). Breach of contract claims must allege a valid and enforceable contract <u>between the parties</u> in order to survive a motion to dismiss. *Id.* at *7.

27.    In *Lee Swimming Pools, LLC*, Adam Landrum was sued individually based on a provision of a contract between two contracting corporate entities that purported to make Landrum a guarantor of the obligations on one contracting party's obligations. *Id.* at *6. The parties to the contractual agreement were Bay Pool Company, LLC and Bay Pool Company Construction, LLC. *Id.* "Each principal signed the Agreement on behalf of his respective LLC, but neither signed as an individual." *Id.*

28.    The court held that absent a valid and enforceable agreement against Adam Landrum, individually, claims "for breach of contract, breach of the implied duty of good faith and fair dealing, and tortious breach of contract must all be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Id.* (citing *Rosenfelt v. Mississippi Dev. Auth.*, 262 So. 3d 511, 517 (Miss. 2018)). The facts alleged in the amended complaint and attached contract were found to be insufficient to support any claim related to a breach of contract against Adam Landrum. *Id.* at *7. The court further held that the provision purporting to make Adam Landrum a guarantor of a contracting party's obligations was unenforceable against Landrum, individually, because Landrum was not a party to the contract. *Id.* at 9*.

29. "A tortious breach of contract is a breach of contract coupled with 'some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort.'" *Id.* at 11. (quoting *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 66 (Miss. 2004)). A claim of tortious breach of contract is not viable cause of action when there is no contract between the parties. *Id.*

30. Counter-Plaintiffs make no allegation that Hirsch was a party to any contract in the claims made against Hirsch. It is undisputed that the parties to the alleged "Chief Marketing and Consulting Agreement" were AC2T, Inc., d/b/a Spartan Mosquito, referred to as "Company", Brian J. Carter and Carter Custom Design, LLC, referred to as "Consultant". *See* ECF [14-1]. The "United States Exclusive Internet Reseller Agreement for Third Party Marketplaces" ("Reseller Agreement") was a contract between AC2T, Inc. and Lights On Distributors, LLC. *See* ECF [14-2]. The "Client Non-Solicitation Agreement" was an agreement between Spartan Mosquito/AC2T, Inc. and Think Webstore. *See* ECF [14-3].

31. Counter-Plaintiffs' claims for breach of contact are limited to claims against Spartan. There is not a single allegation of valid, enforceable contract between Hirsch and any Counter-Plaintiffs. The first element of a breach of contract is a valid, enforceable contract. The contracts were made exhibits to the Counterclaim. There is no allegation or document attached to the Counterclaim that plausibly states a claim against Hirsch for breach of contract. Accordingly, all breach of contract claims against Hirsch fail as Hirsch was not a party to any contract.

32. Counter-Plaintiffs' claims of tortious breach of contract and breach of good faith and fair dealing also fail. A tortious breach of contract must involve an underlying breach of contract. These claims are derivative of an underlying breach of contract. Hirsch cannot breach a contract when he was not a party to the contract. Likewise, the claims against Hirsch for breach of

good faith and fair dealing are premised on the existence of a valid contract between Counter-Plaintiffs and Hirsch. There has been not a single allegation that Hirsch was a contracting party. Rather, the clear language of the contracts explicitly state the parties to each agreement. Hirsch was not one of those contracting parties.

33. Counter-Plaintiffs' claims against Hirsch, individually, for breach of contract, tortious breach of contract and breach of good faith and fair dealing fail to state a claim upon which relief may be granted. These claims against Hirsch, individually, in Counts II, V, and X must be dismissed.

### D. The heightened pleading standard required for claims of fraud mandates dismissal Counts III and XI.

34. Allegations of misrepresentation are subject to the pleading requirements of Fed. R. Civ. Pro. 9(b). *Cummings v. Wells Fargo, NA*, Civil Action No. 1:18-CV-72-SA-DAS (N.D. Miss. 2019)(citing *Truddle v. Wyeth, LLC*, No. 2:11-CV-207-GHD, 2012 WL 3338715, at *2 (N.D. Miss. Aug. 14, 2012)).

35. Fed. R. Civ. P. 9(b) operates to screen meritless fraud claims by requiring specific allegations constituting fraud. *US ex rel. Grubbs v. Kanneganti*, 565 F. 3d 180, 185 (5th Cir. 2009). The averments of fraud, taken as true, must rise to the level of "plausible, not merely conceivable" relief. *Id.* at 186. At a minimum, the facts constituting fraud require factual pleadings stating "'the time, place and contents of the false representation[], as well as the identity of the person making the misrepresentation and what the person obtained thereby.'" *Id.* (quoting *United States ex rel. Russel v. Epic Healthcare Mgmt. Group*, 193 F. 3d 304, 308 (5th Cir. 1999)).

36. A plaintiff is required to plead the "who, what, when, where, and how of the alleged fraud." *Musket Corp. v. Suncor Energy (U.S.A.) Mktg.*, 759 Fed. Appx. 280, 287 (5th Cir. 2019) (citation omitted).

37. Further, allegations of misrepresentation require, at a minimum, "'Plaintiffs to specify with particularity what actions [they took] or forewent in reliance upon Defendants' alleged misrepresentations.'" *Id.* (quoting *In re BP P.L.C. Sec. Litig.*, No. 4:12-CV-1256, 2013 WL 6383968, at *39 (S.D. Tex. Dec. 5, 2013)).

38. Counter-Plaintiffs allege in Counts III and XI that the actions of Spartan and Hirsch amount to fraud and/or misrepresentation. The allegations fail to sufficiently plead such causes of action as required by Fed. R. Civ. P. 9. and must be dismissed.

39. Count III of the Counterclaim alleges fraud, intentional misrepresentation and concealment against Spartan and Hirsch. The allegations contained in Count III appear to be nothing more than a recitation of the elements of fraud with no basis in any factual allegation. At no point does the Counterclaim state what the alleged misrepresentations were, where the misrepresentation occurred, when the misrepresentation occurred, why the misrepresentation allegedly took place, or how the misrepresentation caused counter-plaintiffs to affirmatively act, in reliance thereof.

40. Counter-Plaintiffs' response to the motion to dismiss Count III references factual allegations of paragraph 27 (restating language from the Consulting Agreement § 3(c), (d)); paragraph 28 (restating language from the Consulting Agreement § 3(f)); paragraph 65 ("Prior to 2021, Spartan consistently provided information regarding its gross profits to CCD/Carter…"); paragraph 66 ("However, in 2021, AC2T stopped providing this information."); and paragraph 75 ("on information and belief Mr. Hirsch has intentionally underreported AC2T profits by paying his wife significant sums of money in order to underpay or not pay CCD/Carter…"). The remaining paragraphs cited in Counter-Plaintiffs' response to the motion to dismiss reference paragraphs included in Count III, paragraphs 96-105. These paragraphs are nothing more than a

recitation of the elements of fraud, intentional misrepresentation, and/or concealment. These allegations are not particularly pled allegations of fact; they are threadbare conclusions.

41. The only allegation made by Counter-Plaintiffs that even remotely approaches a claim of fraud, misrepresentation, or concealment is the allegation made in paragraph 75 of the Counterclaim. Counter-Plaintiffs claim "on information and belief, Mr. Hirsch" somehow diverted Spartan funds to Mr. Hirsch's wife in an attempt to conceal gross profits and reduce the amount owed to CCD and Bryan J. Carter. This is a seemingly inconsistent position as Counter-Plaintiffs allege Spartan consistently provided financial information prior to 2021. *See* ECF 14, ¶ 65. In the following paragraph of the Counterclaim, it is alleged "[h]owever, in 2021, AC2T stopped providing this information." *See* ECF 14, ¶ 66. There is no reference as to when Hirsch's wife was paid any sum of money, how it was concealed when financial information was provided, how refusing to provide any financial information after to 2021 equates to fraudulent underreporting by diverting funds, or anything beyond "information and belief" in support of its claim for fraud, intentional misrepresentation, or concealment.

42. Count III fails to plead the who, what, when, where, how and why required by Fed. R. Civ. P. 9. Counter-Plaintiffs allege to have received financial information for several years prior to 2021. Yet, there is not a single reference to when the financial statements misrepresented Spartan's gross profits, how the misrepresentations were made, or anything beyond mere "information and belief". The allegations of Count III are based on information and belief, not factual pleadings. As such, Count III must be dismissed.

43. Count XI also fails to particularly plead the factual allegations amounting to fraud. The alleged fraud and/or misrepresentation allegedly consists of language contained <u>within</u> the Reseller Agreement. The Reseller Agreement was entered into by the parties on May 21, 2018.

14

*See* ECF 14, ¶ 32.  Counter-Plaintiff, LOD, alleges that a misrepresentation was made in an email on May 14, 2018.  *See* ECF 14, ¶ 142-146.

44.     The Reseller Agreement contained a "500,000 unit sales commitment for the first year of the Reseller Agreement."  *See* ECF 14, ¶ 142.  LOD attempts to allege fraud premised upon LOD's lack of understanding the terms of the contract and the consequences of a failure to perform contractual obligations.  Parties to a contract are charged with reading and understanding the terms of a contract. *Chatman v. Jimmy Gray Chevrolet, Inc.*, 2016 U.S. Dist. LEXIS 124377, *21 (N.D. Miss. 2016) (quoting *Bell v. Koch Foods of Miss., LLC*, 358 F.App'x 498, 503 (5th Cir 2016)).

45.     LOD further attempts to use parole evidence of the parties understanding, or lack thereof, to support its claim of fraud.  The contractual terms were freely entered into by the parties and Mississippi law charges a party with understanding what the terms of a contract mean once the contract is executed.  LOD, interestingly, claims "AC2T and Hirsch failed to disclose any interpretation of the volume provision," a contractual provision of the Reseller Agreement, which amounts to fraud.  *See* ECF 14, p. 16 n. 4.  Counter-Plaintiffs also rely on an email between the parties negotiating the terms of a contract in support of a fraud claim.

46.     The Reseller Agreement contained a Contract Interpretation clause that stated "Each party hereto acknowledges that it has had ample opportunity to review and comment on this Agreement.  This Agreement shall be read and interpreted according to its plain meaning and ambiguity shall not be construed against either party."  *See* ECF 14-2, ¶ 12.  Claims of fraud based on interpretations on the language, contained within the contract, clearly fail.  Counter-Plaintiffs fail to state a claim upon which relief may be granted.

47.     Again, Counter-Plaintiffs' claims contained in Count XI of the Counterclaim must be dismissed.

E. **A mere reference to the existence of a contract is insufficient to give rise to a claim of tortious interference in Count IX of the Counterclaim.**

48. A cause of action for tortious interference with a contract under Mississippi law requires the following elements:

> (1) That the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted. *Noone v. Ohio Nat'l Life Ins. Co.*, Cause No. 3:20-CV-461-CWR-LGI (S.D. Miss. 2021)(quoting *Cenac v. Murray*, 609 So. 2d 1257 (Miss. 1992)).

A party must also go a step further by showing "an enforceable obligation existed between the plaintiff and another party." *Id.* (quoting *Par Industries, Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)).

49. The Counterclaim alleges Counter-Plaintiff, LOD, "had a contractual relationship with Amazon to create listings and sell products on the Amazon platform." *See* ECF 14, ¶ 128. LOD failed to attach the contract as an exhibit to its Counterclaim and further failed to even allege any enforceable obligation. Instead, LOD merely alleges that common knowledge and common sense suffices to give rise to a claim of tortious interference with contract. It is not alleged that Amazon refuses to allow LOD to sell products. The only product at issue is the sale of Spartan's product, the Spartan Mosquito Eradicator. *See* ECF 14, ¶ 130. Sale of the Spartan Mosquito Eradicator is central to the competing breach of contract claims. Spartan acted within its contractual rights as it relates to the sale of Spartan products.

50. The claim for tortious interference is not based on any contractual **obligations** between LOD and Amazon, as required by Mississippi law. In no way does LOD allege sufficient facts to support a claim of tortious interference with a contract between LOD and Amazon. The claim fails and its face and must be dismissed.

III. CONCLUSION

51. Counts I, II, III, V, IX, X, and XI of Counter-Plaintiffs' Counterclaim are due to be dismissed. Counter-Plaintiffs failed to plead or satisfy a condition precedent to the alleged "Chief Marketing and Consulting Agreement." Counter-Plaintiff attempt to impose liability on Hirsch individually, despite Hirsch acting as a disclosed agent of Spartan, and not a party to any contract made subject of this action. Further, Counter-Plaintiffs' response concedes the claims against Hirsch, individually, are not premised on piercing the corporate veil. The Counterclaim, on its face, fails to particularly plead facts in support of claims of fraud, concealment, and misrepresentation. Lastly, a claim of tortious interference requires more than common sense and knowledge. It requires the existence of an affirmative obligation, a contract, which does not exist between LOD and Amazon.

52. When viewing the Counterclaim filed by Counter-Plaintiffs, accepting the allegations as true, Counts I, II, III, V, IX, X, and XI of the Counterclaim fail to state a claim upon which relief may be granted. These claims must be dismissed.

WHEREFORE, PREMISES CONSIDERED, Counter-Defendant AC2T, Inc. d/b/a Spartan Mosquito and Third-Party Defendant Jeremy Hirsch respectfully request that the Court dismiss the claims of Counter-Plaintiffs and Third-Party Plaintiffs Bryan Carter, Carter Custom Design, LLC, CCD Webstore, LLC d/b/a Think Webstore, and Lights On Distributors, LLC as set forth herein above and award attorney's fees, expenses, and costs of court to Counter-Defendant AC2T, Inc. d/b/a Spartan Mosquito and Third-Party Defendant Jeremy Hirsch.

ALTERNATIVELY, PREMISES CONSIDERED, Counter-Defendant AC2T, Inc. d/b/a Spartan Mosquito and Third-Party Defendant Jeremy Hirsch respectfully request that the Court stay this litigation and order all parties to mediation as to all disputes existing between them.

RESPECTFULLY SUBMITTED, on this the 2d day of March, 2022.

                AC2T, INC.
                D/B/A SPARTAN MOSQUITO,
                PLAINTIFF/COUNTER-DEFENDANT

                JEREMY HIRSCH,
                THIRD-PARTY DEFENDANT

BY: *s/Seth M. Hunter (MSB# 101145)*
       Jacob D. King (MSB# 104157)
       Dukes Dukes & Hunter
       P.O. Box 2055
       Hattiesburg, MS 39403
       Tel: (601) 544-4121
       Fax: (601) 544-4425
       E-Mail: shunter@jdukeslaw.com
       E-Mail: jking@jdukeslaw.com
       *Attorney for Plaintiff/Counter-Defendant*
       *AC2T, Inc. d/b/a Spartan Mosquito,*
       *and Third-Party Defendant Jeremy Hirsch*

**CERTIFICATE OF SERVICE**

The undersigned herein states that he has this day served upon the following persons at their e-mail addresses listed below a true and correct copy of the foregoing instrument by way of the Electronic Court Filing System for the U.S. District Court for the Southern District of Mississippi:

>J. Chase Bryan, Esq.
>Young Wells Williams, PA
>P.O. Box 6005
>141 Township Avenue, Suite 300 (39157)
>Ridgeland, MS 39158
>E-mail:cbryan@youngwells.com
>*Counsel for Defendants/*
>*Counter-Plaintiffs and Third-Party Plaintiffs*
>
>George R. Spatz, Esq.
>Amin Talati Wasserman, LLP
>200 S. Wacker Dr., Ste. 2000
>Chicago, IL 60606
>E-mail: gspatz@amintalati.com
>*Counsel for Defendants/*
>*Counter-Plaintiffs and Third-Party Plaintiffs*

RESPECTFULLY SUBMITTED, this 2d day of March, 2022.

*s/Seth M. Hunter (MSB# 101145)*