IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

AC2T, INC. DBA SPARTAN MOSQUITO         Plaintiff/Counter-Defendant

v.         Civil Action No. 2:21-CV-93-TBM-RPM

BRYAN CARTER, CARTER CUSTOM
DESIGN, LLC, CCD WEBSTORE, LLC
DBA THINK WEBSTORE, and LIGHTS
ON DISTRIBUTORS, LLC         Defendants/Counter-Plaintiffs/
        Third Party Plaintiffs

v.

JEREMY HIRSH, MATTHEW JACKSON,
and JOHN DOES 1-50         *Third-Party Defendants*

## MATTHEW JACKSON'S ANSWER AND DEFENSES TO THIRD PARTY COMPLAINT

Matthew Jackson, third-party defendant herein, responds to the allegations against him in the Third-Party Complaint, as follows:

## ANSWER

This third-party defendant responds to the allegations against him, paragraph by paragraph, as follows:

1. In the Summer of 2014, Jeremy Hirsch decided to develop a product with the goal of killing mosquitos. The product was launched in or about Spring 2017 through Mr. Hirsch's company, AC2T, as the Spartan Mosquito Eradicator.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

2. To help establish AC2T's nascent product, AC2T entered into various agreements with Think Webstore, CCD, and Carter to provide marketing and other services.

**Answer**:   This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

3.      AC2T further entered into an agreement with LOD to provide exclusive reseller services for the product on third party marketplaces such as Amazon and eBay.

**Answer**:   This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

4.      However, after these entities successfully developed and executed a strategy to establish the product, Mr. Hirsch, decided he would cut them out and ignore the various contractual obligations that AC2T owed to them.

**Answer**:   This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

5.      If Mr. Hirsch wanted to end his relationship with Think Webstore, CCD, Carter, and LOD, there was a right way and a wrong way to do it. Mr. Hirsch chose the wrong way and AC2T and/or Hirsch intentionally and willfully breached their duties by (1) soliciting and hiring Think Webstore's employees and contractors in violation of non-competition and non-solicitation agreements, (2) purporting to restrict LOD's rights under the distribution agreement in breach thereof, (3) tortiously interfering with LOD's sale of product on Amazon, (4) stopping payment under the consulting agreement for marketing services, (5) further breaching the consulting agreement by refusing to provide financial information to which Carter and CCD were entitled, and, otherwise, (6) fraudulently diverting and misrepresenting AC2T's profits in an attempt to underpay or not pay Carter and CCD.

**Answer**:   This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## PARTIES

6.      Counter-Defendant AC2T, Inc., is a Mississippi corporation with its principal place of business in Laurel, Mississippi. At all relevant times, AC2T manufactured and sold the Spartan Mosquito Eradicator product.

2

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

7.     At all relevant times, Third Party Defendant Jeremy Hirsch was the Chief Executive Officer of AC2T, Inc. and is an adult resident of the State of Mississippi.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

8.     Third Party Defendant Matthew Jackson was a Think Webstore employee, Vice President of Client Services, who now holds himself out as a Spartan Mosquito representative. Mr. Jackson is an adult resident of the State of Mississippi.

**Answer**: Denied, as stated. This third-party defendant admits only that he was a Think Webstore employee, Vice President of Client Services, and that he is an adult resident of Mississippi. The remaining allegations in this paragraph are denied, as they are stated.

9.     Third Party Defendants John Does 1-50 are persons and/or entities whose names and identities are not currently known but who may be liable for some or all of the claims set forth herein. Once their names and/or identities are discovered, they will be properly substituted.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

10.     Counter-Plaintiff Bryan Carter is an adult resident of Madison, Mississippi. Carter is a member and manager of Counter-Plaintiffs Carter Custom Design, LLC, a Mississippi limited liability company, and CCD Webstore, LLC dba Think Webstore, a Mississippi limited liability company. Carter is a member of Counter-Plaintiff Lights On Distributors, LLC, a Mississippi limited liability company. LOD has one additional member who is also an adult resident of the State of Mississippi.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 as the counterclaims and third party claims arise out of the same series of transactions and occurrences and are substantially related to the matters asserted in the Complaint.

**Answer**: Denied.

12.     This Court has personal jurisdiction over AC2T, Inc. as it is a Mississippi domestic corporation that conducts business in the State of Mississippi.

**Answer**: Admitted, upon information and belief.

13.     This Court has personal jurisdiction over Jeremey Hirsch as he is an adult resident and citizen of the State of Mississippi.

**Answer**:  Admitted, upon information and belief.

14.     This Court has personal jurisdiction over Matthew Jackson as he is an adult resident and citizen of the State of Mississippi.

**Answer**:  Admitted.

15.     Venue is proper in this Court as a substantial portion of the events giving rise to this action occurred in this District.

**Answer**: Admitted.

## THINK WEBSTORE ENGAGEMENT

16.     In or about late 2016/early 2017, Mr. Hirsch approached Carter regarding marketing services for what at that time was a non-descript black tube Mr. Hirsch called Mosquito Bomb.

**Answer**:  This  third-party  defendant  lacks  sufficient  knowledge  or information to admit or deny the allegations in this paragraph.

17.     AC2T ultimately engaged Think Webstore to provide various creative services to support the launch of the product, including branding that resulted in the Spartan Mosquito Eradicator name, creation of the Spartan Mosquito logos and designs, creation of marketing collateral, public relations support, and social media and customer service support.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

18.     Matthew Jackson was Think Webstore's Vice President of Client Services. While Mr. Jackson had broad involvement with clients, over time Mr. Jackson became more or less dedicated to providing support to AC2T.

**Answer**: Denied, as stated. This third-party defendant admits only that he was Think's VP of Client Services and that he had broad involvement with Think clients. The remaining allegations in this paragraph are denied, as they are stated.

19.     AC2T used Facebook for its product support and wanted Think Webstore to manage the support services. Think Webstore hired a team to manage these services. Mr. Jackson led the support team. Initially, another Think Webstore employee, Kelsie Walters, provided support. Later, Jessica Johns and Abigale Williams were hired to help staff customer support and respond to customer inquiries.

**Answer**: Denied, as stated. This third-party defendant admits only that AC2T hired Think to manage its Facebook account, which was one of the mediums utilized by AC2T for support services. This third-party defendant further admits that Kelsie Walters, Jessica Johns, and Abigale Williams, among others, were involved in helping with customer support through Facebook, at various times. The remaining allegations in this paragraph are denied, as they are stated.

20.     From in or around 2017 through 2020, Think Webstore invoiced AC2T for the project-based work and services it performed for AC2T and AC2T paid for the work and services.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## THE CONSULTING AGREEMENT

21.    Further, to allow Carter to have "skin in the game" and for Mr. Hirsch to get cheaper rates, Mr. Hirsch approached Carter regarding engaging him under an additional consulting services agreement.

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

22.    The parties agreed that AC2T would separately engage Carter through CCD and in exchange for Carter and Think Webstore providing discounted services, CCD/Carter would receive payment if 2% of AC2T's monthly gross profits exceeded the amount of work invoiced by Think Webstore. In addition, Carter would receive a 2% shadow equity interest in the value of AC2T to be paid upon the sale of AC2T, death, or the termination of services.

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

23.    This arrangement incentivized AC2T to maximize use of Think Webstore's services and provided incentive for Carter to help ensure AC2T's success.

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

24.    On or about February 2, 2018, AC2T entered into a Chief Marketing and Consulting Agreement with CCD and Carter (the "Consulting Agreement").

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

25.     Mr. Hirsch signed the Consulting Agreement on behalf of AC2T before a Notary Public of the State of Mississippi.

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

26.     A true and correct copy of the Consulting Agreement is attached hereto as Exhibit A.

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

27.     The Consulting Agreement provides for quarterly compensation to CCD/Carter as follows:

> COMPANY shall pay unto CONSULTANT Two Percent (2%) of the dollar amount of net monthly sales (gross profit) generated from the COMPANY's domestic e-commerce and direct retail sales of the mosquito eradicator through Spartan Mosquito to the extent that this amount exceeds the dollar amount of the monthly billing of THINK WEBSTORE. The computation of net monthly sales or gross profit shall be determined in accordance with generally accepted accounting principles.

> During the time frame in which CONSULTANT provides the Consulting and Marketing Services to COMPANY, payment for each

respective quarter shall be made on the 15th day after the close of such quarter....

(Consulting Agreement, Exh. A § 3(c), (d)).

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

28.    To calculate the percentage owed, CCD/Carter was entitled to receive monthly sales reports from AC2T. The Consulting Agreement provides as follows:

COMPANY agrees to provide CONSULTANT with a monthly report of the applicable sales for determining CONSULTANT's commissions under this agreement during the time CONSULTANT provides the Marketing and Consulting Services....

(Consulting Agreement, Exh. A. § 3(f)).

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

29.    Further, upon termination of the Consulting Agreement, AC2T is obligated to pay Carter 2% of the fair market value of AC2T. The Consulting Agreement provides as follows:

In the event that CONSULTANT's services to the COMPANY are terminated or cease pursuant to paragraph 5, COMPANY shall have the obligation to purchase and redeem all of CONSULTANT's 2% interest in the value of the COMPANY...The purchase price for CONSULATANT's interest shall be 2% of the fair market value of the company....

(Consulting Agreement, Exh. A § 5).

8

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

### THE RESELLER AGREEMENT

30.     To further sales of the product, Mr. Hirsch approached Carter to see if he was interested in serving as the exclusive reseller of the product on third party Internet marketplaces such as Amazon and eBay and eventually Walmart and other online outlets.

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

31.     On May 1, 2018, Carter and a business partner formed Lights on Distributors, LLC to be the exclusive Internet reseller for AC2T.

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

32.     On or about May 21, 2018, AC2T entered into an United States Exclusive Internet Reseller Agreement for Third Party Marketplace with LOD (the "Reseller Agreement").

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed

to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

33. Mr. Hirsch signed the Reseller Agreement on behalf of AC2T before a Notary Public of the State of Mississippi.

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

34. A true and correct copy of the Reseller Agreement is attached hereto as Exhibit B.

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

35. Pursuant to Section **1** of the Reseller Agreement, AC2T appointed LOD as the exclusive reseller on Amazon and eBay as follows:

> 1. Appointment. AC2T grants to Reseller and the Reseller accepts the right to purchase Products directly from AC2T; AC2T agrees to fulfill Reseller orders so long as AC2T is paid according to terms; Reseller agrees to exclusively market, sell, and distribute the Products to End-Users located in the Territory solely on its website and any third party marketplaces such as eBay and Amazon (any others must be approved in writing from AC2T); AC2T agrees that Reseller is the exclusive third party marketplace reseller.

(Reseller Agreement, Exh. B § 1).

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed

to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

36.     Upon expiration or termination, Section 8 of the Reseller Agreement provides LOD the rights to (1) use Licensed IP (as defined in the Reseller Agreement) and any other AC2T intellectual property, (2) advertise, and (3) represent itself as a AC2T Reseller until "inventoried product has been sold, returned, or liquidated" as follows:

> Upon expiration or termination of this Agreement, Reseller shall discontinue and abandon its use of the Licensed IP and any other AC2T intellectual property and shall cease to advertise and/or represent itself as a AC2T Reseller after inventoried product has been sold, returned, or liquidated.

(Reseller Agreement, Exh. B § 8).

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## THE NON-SOLICITATION AGREEMENT

37.     Unable to simply enjoy the success created by AC2T's various engagements, and specifically the project work being performed by Think Webstore, Mr. Hirsch sought to create turmoil between Think Webstore and its employees and contractors.

**Answer**: The allegations in this paragraph are not directed toward, and do not require any response from, this third-party defendant. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

38.     In or about early 2019, Mr. Hirsch started making inquiries to Think Webstore's employees and contractors about their compensation and the possibility of them working directly for him instead of working for Think Webstore.

**Answer**: To the extent the allegations in this paragraph are directed, or construed as being directed, toward this third-party defendant, such allegations are denied, as they are stated.

39.    In or about May 2019, Mr. Hirsch specifically and openly solicited Jessica Johns to leave Think Webstore to work for AC2T.

**Answer**: Denied, as stated.

40.    Carter objected to this inappropriate conduct.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

41.    In response, Mr. Hirsch offered that if he was allowed to hire Ms. Walters, he would not solicit or hire any of Think Webstore's other employees or contractors.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

42.    In exchange for this agreement, Think Webstore signed a release of Ms. Walters' restrictive covenants and agreed to continue doing business with AC2T.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

43.    For its part, on or about June 3, 2019, AC2T signed a Client Non-Solicitation Agreement with Think Webstore ("Non-Solicitation Agreement").

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

44.    A true and correct copy of the Non-Solicitation Agreement is attached hereto as Exhibit C.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

45.     Pursuant to the Non-Solicitation Agreement, AC2T agreed that during its business relationship with Think Webstore and for a period of five years after termination, AC2T would not, directly or indirectly, "(c) solicit, employ, deal with, or otherwise interfere with any of the [Think Webstore]'s contracts or relationships with any employee, officer, director, shareholder, or independent contractor, whether for the Client's own account or for the account of any other person or entity, and regardless of the reason...." (Non-Solicitation Agreement, Exh. C).

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## MR. HIRSCH AND AC2T BREACH ALL OF THEIR AGREEMENTS

46.     Mr. Hirsch did not keep his word for long.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

47.     In and about 2020, Mr. Hirsch decided that he would walk away from Think Webstore, Carter, and LOD without regard for the obligations owed to them, after which Mr. Hirsch has actively and intentionally breached and sought to interfere with Think Webstore's, CCD's, Carter's, and LOD's rights.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

### AC2T Breaches the Non-Solicitation Agreement

48.     Shortly after Mr. Hirsch signed the Non-Solicitation Agreement and at least as early as July 2020, on information and belief, Mr. Hirsh solicited at least Think Webstore employee Matthew Jackson and Think Webstore contractors Jessica Johns and Abigale Williams to terminate their employment with Think Webstore.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

49.     In or about July 2020, Abigale Williams gave two weeks' notice that she would be terminating her employment with Think Webstore.

**Answer**:  This  third-party  defendant  lacks  sufficient  knowledge  or information to admit or deny the allegations in this paragraph.

50.     Mr. Jackson informed Carter that Ms. Williams had gotten married and was moving to Colorado. On information and belief, following termination of her employment Ms. Williams continued providing services to AC2T.

**Answer**: Denied.

51.     At the same time Ms. Williams was leaving, Mr. Jackson provided three weeks' notice that he would be terminating his employment with Think Webstore. At the time of his termination, Mr. Jackson claimed he was going to work at the bank where his wife worked, taking a position as a loan officer. On information and belief, following termination of his employment, Mr. Jackson continued providing services to AC2T.

**Answer**: Denied.

52.     This was followed by Ms. Johns providing two weeks' notice that she would be terminating her employment with Think Webstore. At the time of her termination of employment, Ms. Johns said she was going to an agency a friend of hers was starting. On information and belief, following termination of her employment Ms. Johns continued providing services to AC2T.

**Answer**: Denied.

53.     All three left Think Webstore in August 2020.

**Answer**: Denied.

54.     Then, on January 9, 2021, after terminating his employment with Think Webstore, Matthew Jackson inadvertently emailed Think Webstore from a Spartan Mosquito email address regarding the submission of a customer request.

**Answer**: Admitted.

55.     On January 13, 2021, Carter contacted Mr. Hirsch regarding this violation of Mr. Jackson's non-compete agreement and AC2T's non-solicitation agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

56.    In response, on January 14, 2021, Mr. Hirsch claimed Think Webstore's people were hired by Sherwood Media. Mr. Hirsch feigned that he knew nothing about this and that it was a coincidence because Sherwood Media provides services for AC2T and has the authority to set up Spartan email accounts.

**Answer**:    This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

57.    Sherwood Media is a dissolved company originally founded by Anthony Sherwood Herrington. On information and belief, Mr. Herrington has been the Director of Innovation for AC2T from October 2019 to the present.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

58.    On or about April 15, 2021, Think Webstore sent a letter to AC2T regarding AC2T's breach of the Non-Solicitation Agreement by directly and/or indirectly soliciting and hiring Think Webstore's employees and contractors.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

59.    Think Webstore further sent a letter to Mr. Jackson regarding his breach of his non-competition agreement with Think Webstore. Mr. Jackson never responded to this letter.

**Answer**: Denied, as stated. It is admitted that Think Webstore sent this third-party defendant a letter and that this third-party defendant did not respond. However, any allegation that this third-party defendant breached a contract is expressly denied.

### AC2T Breaches the Reseller Agreement

60.    In addition to hiring away Think Webstore's employees and contractors, in late 2020, Mr. Hirsch became upset that the Amazon store run by LOD was more prominent in Google search results for the Spartan Mosquito product than

AC2T's own website. Accordingly, AC2T changed its strategy to sell products through the AC2T website.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

61.    In furtherance of this plan, on or about October 13, 2020, AC2T sent a letter to LOD, stating that AC2T's "board has decided to no longer allow third party market sales" and purporting to unilaterally restrict LOD under the Reseller Agreement to selling the Spartan Mosquito product on LOD's website only—and not Amazon, the world's largest online marketplace.

**Answer**:  This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

62.    At this point in time, LOD had purchased from AC2T and had paid for inventory sufficient to satisfy the demand for sales of the product through Amazon.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

63.    In comparison, sales through LOD's website were negligible and would not require maintenance of inventory at the same level as required to satisfy Amazon sales.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

64.    On or about April 15, 2021, LOD sent AC2T a letter, formally rejecting AC2T's attempt to restrict LOD's rights.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## AC2T Breaches the Consulting Agreement

65.    Prior to 2021, AC2T consistently provided information regarding it gross profits to CCD/Carter with a 2% calculation for payment under the Consulting Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

66.     However, in 2021, AC2T stopped providing this information.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

67.     On April 7, 2021, after the close of the first quarter, Carter requested AC2T's financial statements for Q1 2021. On April 15, 2021, Carter followed up on when AC2T would release the Q1 2021 numbers.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

68.     Mr. Hirsch responded that he could provide an estimate, but that final numbers would not be available for about three weeks because Spartan's accounting was about 3,000 entries behind for March 2021.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

69.     AC2T provided an estimate showing 2% of gross profits, but never provided official numbers or payment under the Consulting Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

70.     On or about April 15, 2021, CCD/Carter provided ninety days' notice of termination of the Consulting Agreement. In this notice, CCD/Carter specifically requested monthly reports of sales for Q1 2021 through the ninety day period to audit the compensation due under the Consulting Agreement. CCD/Carter further highlighted that upon cessation of services, AC2T was obligated to purchase and redeem all of CCD/Carter's interest in the value of AC2T and stated that they would select a valuation date following receipt of the monthly sales reports.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

71.     AC2T did not respond to this request.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

72.     On September 2, 2021, CCD/Carter further wrote to AC2T declaring AC2T in breach of the Consulting Agreement for failing to provide monthly sales reports under the Consulting Agreement and demanded that AC2T provide the monthly sales reports.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

73.     CCD/Carter further requested specific financial information the accountant Carter proposed to value AC2T and CCD/Carter's 2% interest had requested.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

74.     Despite its obligations under the Consulting Agreement, AC2T has failed and refuses to provide any financial information in response to CCD/Carter's requests.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

75.     In addition, on information and belief, Mr. Hirsch has intentionally underreported AC2T profits by paying his wife significant sums of money in order to underpay or not pay CCD/Carter under the Consulting Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

**Mr. Hirsch Interferes with Amazon Sales**

76.     On or about April 20, 2021, LOD reactivated the listing for the product on Amazon.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

77.     In response, on April 21, 2021, Mr. Hirsch wrote to LOD stating that the Amazon listing was offering the product in states in which it could not be sold (presumably because AC2T failed to renew the regulatory approval for such sales) and threatened to report LOD to any State into which sales were made where there was no longer approval to sell the product.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

78.     LOD asked Mr. Hirsch to confirm the list of states the Spartan Mosquito product could be sold into. However, Mr. Hirsch never provided this information, forcing LOD to take its Amazon listing down and independently investigate the states into which the product could be sold.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

79.     Once LOD established the states into which it could sell the product, LOD reactivated the product listing.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

80.     This met with continued interference by Mr. Hirsch.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

81.     On or about July 1, 2021, Mr. Hirsch submitted a rights holder notice to Amazon (Complaint ID: 8534265731) falsely stating, "[e]veryone we sell to has signed an agreement NOT to sell on 3rd party websites due to EPA regulations.

There is no way of knowing if the product is counterfeit or not, the product images and detailed pages are unlawfully using our trademarks."

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

82.   Mr. Hirsch was well aware that LOD was authorized to sell product under the Reseller Agreement and that the products being listed by LOD were genuine product purchased from AC2T, but nonetheless made a false affidavit to Amazon claiming counterfeit products.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

83.   On July 5, 2021, Mr. Hirsch submitted another rights holder notice to Amazon (Complaint ID 8538370341) falsely stating, "[t]he ASIN's B07PRPD37Y and B07NLJ3G99 are illegally using the referenced Trademark."

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

84.   Again, at the time of this notice, Mr. Hirsch was well aware that LOD had the right to (1) use all AC2T intellectual property, including the trademarks, (2) advertise, and (3) represent itself as a AC2T Reseller until "all inventoried product has been sold, returned, or liquidated," but nonetheless made another false affidavit to Amazon claiming illegal conduct on the part of LOD.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

85.   These complaints resulted in the product being taken down from Amazon.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

86.   On or about July 14, 2021, LOD demanded that AC2T retract any notices submitted to Amazon. However, AC2T refused and has continued to refuse to retract the notices.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

87. LOD further asked for AC2T to repurchase and return the inventory. However, AC2T has refused and refuses to repurchase and accept the return of the inventory.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## COUNT I

### BREACH OF CONTRACT - CONSULTING AGREEMENT
### (By CCD and Carter Against AC2T)

88. CCD and Carter incorporate the foregoing allegations contained in Paragraphs 1 through 87 as if fully set forth herein.

**Answer**: In response to paragraph 88, this third-party defendant incorporates its responses to all preceding paragraphs.

89. At all relevant times, the Consulting Agreement was a valid and binding contract among AC2T, CCD, and Carter.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

90. AC2T has breached the Consulting Agreement by, at least, the following:

> a. Failing to pay to CCD/Carter 2% of the dollar amount of net monthly sales (gross profit) generated from the AC2T's domestic e-commerce and direct retail sales of the mosquito eradicator through Spartan Mosquito to the extent that this amount exceeds the dollar amount of the monthly billing of THINK WEBSTORE.

> b. Failing to compute net monthly sales or gross profit in accordance with generally accepted accounting principles.

c.      Failing to make payment for each quarter on the 15th day after the close of the quarter.

d.      Failing to provide CCD/Carter a monthly report of the applicable sales for determining CCD/Carter's commissions.

e.      Failing to purchase and redeem all of CCD/Carter's 2% interest in the value of AC2T.

f.      Failing to use "best efforts" to settle the Dispute and failing to consult and negotiate in good faith, including but not limited to failing to provide requested information necessary to audit compensation and to value AC2T.

g.      Failing to provide complete cooperation and honesty in fact in the performance of AC2T's obligations.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph, including all of its sub-parts.

91.     CCD and Carter have suffered monetary damages as a result of AC2T's breaches.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

**WHEREFORE** Counter-Plaintiffs CCD and Carter respectfully request that the Court enter judgment in favor of them and against Counter-Defendant AC2T to include compensatory damages in an amount to be proven at trial; contractual interest; specific performance; prejudgment interest, attorneys' fees, costs and post-judgment interest; and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## COUNT II

## BREACH OF GOOD, FAITH AND FAIR DEALING /
## TORTIOUS BREACH OF CONTRACT - CONSULTING AGREEMENT
### (By CCD and Carter Against AC2T and Hirsch)

92. CCD and Carter incorporate the foregoing allegations contained in Paragraphs 1 through 91 as if fully set forth herein.

**Answer**: In response to Paragraph 92, this third-party defendant incorporates his responses to all preceding paragraphs.

91. AC2T and Hirsch have stopped performing and have withheld information CCD and Carter are entitled to under the Consulting Agreement with the intent of impairing CCD and Carter from receiving the benefits that flow from the Consulting Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

92. AC2T's and Hirsch's conduct was prompted by an improper motive and not prompted by an honest mistake as to one's rights or duties and violates standards of decency, fairness and reasonableness.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

93. CCD and Carter have been damaged by AC2T's and Hirsch's conduct.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

**WHEREFORE** Counter-Plaintiffs/Third Party Plaintiffs CCD and Carter respectfully request that the Court enter judgment in favor of them and against Counter-Defendant and Third Party Defendant AC2T and Hirsch to include compensatory damages in an amount to be proven at trial; contractual interest; disgorgement of profits and unjust enrichment; specific performance; punitive damages; pre-judgment interest, attorneys' fees, costs and post-judgment interest;

and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## COUNT III

## FRAUD / INTENTIONAL MISREPRESENTATION / CONCEALMENT
(By CCD and Carter Against AC2T and Hirsch)

94.     CCD and Carter incorporate the foregoing allegations contained in Paragraphs 1 through 87 as if fully set forth herein.

**Answer**: In response to Paragraph 94, this third-party defendant incorporates his responses to Paragraphs 1 through 87.

95.     AC2T and Hirsch, acting individually and as an agent of AC2T, made affirmative representations regarding AC2T's revenues and gross profits.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

96.     These representations were material to CCD's and Carter's rights under the Consulting Agreement and entitlement to compensation.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

93.     The financial information provided by AC2T and Hirsch was false and misleading.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

94.     AC2T and Hirsch knew the representations were false and misleading in that the financial information provided did not disclose and concealed that Hirsh had, at a minimum, made improper payments to his wife to underpay or not pay under the Consulting Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

95.      AC2T and Hirsch intended for CCD and Carter to rely upon the information being provided to calculate compensation under the Consulting Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

96.      CCD and Carter were ignorant of AC2T's and Hirsch's diversion of funds to Hirsch's wife.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

97.      CCD and Carter relied on the information provided by AC2T and Hirsch.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

98.      CCD and Carter were entitled to rely upon the financial information provided by AC2T and Hirsch.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

99.      As a result of AC2T's and Hirsch's misrepresentations, CCD and Carter have been consequently and proximately damaged.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

**WHEREFORE** Counter-Plaintiffs/Third Party Plaintiffs CCD and Carter respectfully request that the Court enter judgment in favor of them and against Counter-Defendant and Third Party Defendant AC2T and Hirsch to include

compensatory damages in an amount to be proven at trial; contractual interest; disgorgement of profits and unjust enrichment; specific performance; permanent injunction; punitive damages; pre-judgment interest, attorneys' fees, costs and post-judgment interest; and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## COUNT IV

## BREACH OF CONTRACT - NON-SOLICITATION AGREEMENT
### (By Think Webstore Against AC2T)

106. Think Webstore incorporates the foregoing allegations contained in Paragraphs 1 through 87 as if fully set forth herein.

**Answer**: In response to Paragraph 106, this third-party defendant incorporates his responses to Paragraph 1 through 87.

107. At all relevant times, the Non-Solicitation Agreement was a valid and binding contract between AC2T and Think Webstore.

**Answer**: The allegations in this paragraph call for a legal conclusion and, therefore, do not require a response. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

108. AC2T has breached the Non-Solicitation Agreement by, at least, the following:

      a.    Directly or indirectly soliciting and hiring Think Webstore employee Matthew Jackson to terminate his employment with Think Webstore

      b.    Directly or indirectly soliciting and hiring Think Webstore contractors Jessica Johns and Abigale Williams to terminate their employment with Think Webstore.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph, including all of its sub-parts.

109. Think Webstore has suffered monetary damages as a result of AC2T's breaches.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

**WHEREFORE** Counter-Plaintiff Think Webstore respectfully requests that the Court enter judgment in favor of it and against Counter-Defendant AC2T to include compensatory damages in an amount to be proven at trial; disgorgement of profits, unjust enrichment, and claw back of compensation; specific performance; permanent injunction; pre-judgment interest, attorneys' fees, costs and post-judgment interest; and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## COUNT V

### BREACH OF GOOD FAITH AND FAIR DEALING / TORTIOUS BREACH OF CONTRACT - NON-SOLICITATION AGREEMENT
### (By Think Webstore Against AC2T and Hirsch)

110. Think Webstore incorporates the foregoing allegations contained in Paragraphs 1 through 87 and 106 through 109 as if fully set forth herein.

**Answer**: In response to Paragraph 110, this third-party defendant incorporates his responses to Paragraphs 1 through 81 and 106 through 109.

111.    AC2T and Hirsch breached the Non-Solicitation Agreement with the intent of impairing Think Webstore from receiving the benefits that flow from the Non-Solicitation Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

112.    AC2T's and Hirsch's conduct was prompted by an improper motive and not prompted by an honest mistake as to one's rights or duties and violates standards of decency, fairness and reasonableness.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

113.    Think Webstore has been damaged by AC2T's and Hirsch's conduct.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

**WHEREFORE** Counter-Plaintiff/Third Party Plaintiff Think Webstore respectfully requests that the Court enter judgment in favor of it and against Counter-Defendant and Third Party Defendant AC2T and Hirsch to include compensatory damages in an amount to be proven at trial; disgorgement of profits, unjust enrichment, and claw back of compensation; specific performance; permanent injunction; punitive damages; pre-judgment interest, attorneys' fees, costs and post-judgment interest; and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## COUNT VI

## BREACH OF CONTRACT - BUSINESS PROTECTION AGREEMENT
### (By Think Webstore Against Matthew Jackson)

114.    Think Webstore incorporates the foregoing allegations contained in Paragraphs 1 through 87 as if fully set forth herein.

**Answer**: In response to Paragraph 114, this third-party defendant incorporates his responses to Paragraphs 1 through 87.

115.    On or about January 17, 2012, Matthew Jackson entered into a Business Protection Agreement with Think Webstore. A true and correct copy of the Business Protection Agreement is attached hereto as Exhibit D.

**Answer**: Admitted.

116.    At all relevant times, the Business Protection Agreement was a valid and binding contract between Jackson and Think Webstore.

**Answer**: The allegations in this paragraph call for a legal conclusion and, therefore, require no response from this third-party defendant. If a response is required, then the allegations are denied, as stated.

117. On information and belief, Jackson has breached the Business Protection Agreement by, at least, the following:

> a.    Directly or indirectly diverting or attempting to divert a customer from doing business with Think Webstore or otherwise to change its relationship with Think Webstore.
>
> b.    Directly or indirectly inducing or attempting to induce a customer to cease being a Think Webstore customer of otherwise change its relationship with Think Webstore.
>
> c.    Directly or indirectly rendering services to a competitor of Think Webstore in connection with the sale, merchandising, or promotion of a conflicting product or service to a customer.
>
> d.    Directly or indirectly rendering services to a customer of AC2T.
>
> e.    Directly or indirectly soliciting, employing, dealing with or otherwise interfering with Think Webstore's contracts or relationships with an employee or independent contractor.

**Answer**: Denied.

118.    Think Webstore has suffered monetary damages as a result of Jackson's breaches.

**Answer**: Denied.

**WHEREFORE** Third Party Plaintiff Think Webstore respectfully requests that the Court enter judgment in favor of it and against Third Party Defendant Jackson to include compensatory damages in an amount to be proven at trial; disgorgement of profits, unjust enrichment, and claw back of compensation; specific performance; permanent injunction; pre judgment interest, attorneys' fees, costs and post-judgment interest; and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: Denied.

## COUNT VII

## BREACH OF GOOD FAITH AND FAIR DEALING / TORTIOUS BREACH OF CONTRACT – BUSINESS PROTECTION AGREEMENT
### (By Think Webstore Against Matthew Jackson)

119.    Think Webstore incorporates the foregoing allegations contained in Paragraphs 1 through 87 and 114 through 118 as if fully set forth herein.

**Answer**: In response to Paragraph 119, this third-party defendant incorporates his responses to Paragraphs 1 through 87 and 114 through 118.

120.    Jackson breached the Business Protection Agreement with the intent of impairing Think Webstore from receiving the benefits that flow from the Business Protection Agreement.

**Answer**: Denied.

121.    Jackson's conduct was prompted by an improper motive and not prompted by an honest mistake as to one's rights or duties and violates standards of decency, fairness and reasonableness.

**Answer**: Denied.

122.    Think Webstore had been damaged by Jackson's conduct.

**Answer**: Denied.

**WHEREFORE** Third Party Plaintiff Think Webstore respectfully requests that the Court enter judgment in favor of it and against Third Party Defendant Jackson to include compensatory damages in an amount to be proven at trial; disgorgement of profits, unjust enrichment, and claw back of compensation; specific

performance; permanent injunction; punitive damages; prejudgment interest, attorneys' fees, costs and post-judgment interest; and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: Denied.

**COUNT VIII**

**BREACH OF CONTRACT - RESELLER AGREEMENT**
**(By LOD Against AC2T)**

123. LOD incorporates the foregoing allegations contained in Paragraphs 1 through 87 as if fully set forth herein.

**Answer**: In response to Paragraph 123, this third-party defendant incorporates his responses to Paragraphs 1 through 87.

124. At all relevant times, the Reseller Agreement was a valid and binding contract between AC2T and LOD.

**Answer**: The allegations in this paragraph call for a legal conclusion and, therefore, require no response. If a response is deemed to be required, this third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

125. AC2T has breached the Business Protection Agreement by, at least, the following:

   a.   Refusing to sell product to LOD at the contact rate of $12 per unit.

   b.   Failing and refusing to fulfill orders.

   c.   Restricting and attempting to restrict LOD's appointment to the LOD website.

   d.   Violating exclusivity by authorizing third parties to sell on third party marketplaces.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph, including all of its sub-parts.

126. LOD has suffered monetary damages as a result of AC2T's breaches.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

**WHEREFORE** Counter-Plaintiff LOD respectfully requests that the Court enter judgment in favor of it and against Counter-Defendant AC2T to include compensatory damages in an amount to be proven at trial; disgorgement of profits and unjust enrichment; specific performance; permanent injunction; pre-judgment interest, attorneys' fees, costs and post-judgment interest; and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## COUNT IX
## TORTIOUS INTERFERENCE WITH CONTRACT - AMAZON

### (By LOD Against AC2T and Hirsch)

127. LOD incorporates the foregoing allegations contained in Paragraphs 1 through 87 as if fully set forth herein.

**Answer**: In response to Paragraph 127, this third-party defendant incorporates his responses to Paragraphs 1 through 87.

128. At all relevant times, LOD had a contractual relationship with Amazon to create listings and sell products on the Amazon platform.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

129. AC2T and Hirsch were aware of LOD's contractual relationship with Amazon.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

130. AC2T and Hirsch intentional and willfully interfered with LOD's contractual relationship with Amazon by, at least, submitting false notices to Amazon regarding LOD's listings for the Spartan Mosquito Eradicator product.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

131. AC2T's and Hirsch's conduct was calculated to cause damage to LOD in its lawful business.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

132. AC2T's and Hirsch's conduct was done with the unlawful purpose of causing damage and loss and without right or justification.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

133. As a result of AC2T's and Hirsch's conduct, Amazon took down LOD's listings.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

134. LOD has incurred loss and has been damaged by AC2T's and Hirsch's conduct.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

**WHEREFORE** Counter-Plaintiff/Third Party Plaintiff LOD respectfully requests that the Court enter judgment in favor of it and against Counter-Defendant and Third Party Defendant AC2T and Hirsch to include compensatory damages in an amount to be proven at trial; disgorgement of profits and unjust enrichment; specific performance; permanent injunction; punitive damages; pre-judgment interest, attorneys' fees, costs and post-judgment interest; and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## COUNT X

### BREACH OF GOOD FAITH AND FAIR DEALING / TORTIOUS BREACH OF CONTRACT – RESELLER AGREEMENT (By LOD Against AC2T and Hirsch)

135.    LOD incorporates the foregoing allegations contained in Paragraphs 1 through 87 and 123 through 126 as if fully set forth herein.

**Answer**: In response to Paragraph 135, this third-party defendant incorporates his responses to Paragraphs 1 through 87 and 123 through 126.

136.    AC2T and Hirsch claim to have terminated the Consulting Agreement and, otherwise, restricting LOD's rights thereunder with the intent of impairing LOD from receiving the benefits that flow from the Reseller Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

137.    AC2T and Hirsch have refused and failed to provide information necessary for LOD to sell product under the Reseller Agreement, for example refusing and failing to identify the States in which the product was registered.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

138.   AC2T and Hirsch have, otherwise, misrepresented the obligations under the Reseller Agreement for the purpose of threating and harassing LOD and Carter.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

139.   AC2T's and Hirsch's conduct was prompted by an improper motive and not prompted by an honest mistake as to one's right or duties and violates standards of decency, fairness and reasonableness.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

140.   LOD has been damaged by AC2T's and Hirsch's conduct.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

**WHEREFORE** Counter-Plaintiff/Third Party Plaintiff LOD respectfully requests that the Court enter judgment in favor of it and against Counter-Defendant and Third Party Defendant AC2T and Hirsch to include compensatory damages in an amount to be proven at trial; disgorgement of profits and unjust enrichment; specific performance; permanent injunction; punitive damages; pre-judgment interest, attorneys' fees, costs and post-judgment interest; and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## COUNT XI

## FRAUD / INENTIONAL MISPRERESENTATION / NEGLIGENT MISREPRESENTATION / CONCEALMENT - RESELLER AGREEMENT
### (By LOD Against AC2T and Hirsch)

141.   LOD incorporates the foregoing allegations contained in Paragraphs 1 through 87 as if fully set forth herein.

**Answer**: In response to Paragraph 141, this third-party defendant incorporates his responses to Paragraphs 1 through 87.

142.    Prior to entering into the Reseller Agreement, LOD estimated the amount of sales of product it expected to make. Hirsch stated that he believed that LOD's estimates were low and inserted a 500,000 unit sales commitment for the first year in the Reseller Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

143.    In a May 14, 2018 email from Carter to Hirsch, Carter specifically asked "[w]hat happens if we do not sell 500,000 units?"

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

144.    Mr. Hirsch responded via email that in such event AC2T reserved the right to "open the market" and provided an example of how AC2T may elect to terminate exclusivity in the event AC2T was not satisfied with sales.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

145.    At no point did Hirsch or AC2T state any other consequence of not selling 500,000 units.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

146.    This representation was false and a lie designed to trick LOD into entering into the Reseller Agreement in reliance on the misrepresentation.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

147. The representation was material as LOD required explanation of the provision before it would enter into the Reseller Agreement and would not have entered into the Reseller Agreement had Hirsch told the truth.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

148. Hirsch and AC2T knew the representation was false and that they would later claim that the provision had a different meaning than what was represented to Carter and LOD.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

149. Hirsch and AC2T intended for LOD to rely upon the representation in entering into the Reseller Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

150. Carter and LOD were ignorant of the falsity and deception.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

151. LOD relied on the truth of the representation with a right to rely thereon in entering into the Reseller Agreement.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

152. As a result of AC2T's and Hirsch's misrepresentations, LOD has been consequently and proximately damaged.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

**WHEREFORE** Counter-Plaintiff/Third Party Plaintiff LOD respectfully requests that the Court enter judgment in favor of it and against Counter-Defendant and Third Party Defendant AC2T and Hirsch to include compensatory damages in an amount to be proven at trial; disgorgement of profits and unjust enrichment; specific performance; permanent injunction; punitive damages; pre judgment interest, attorneys' fees, costs and post-judgment interest; and such further and other legal and equitable relief as the Court may deem just and necessary under the circumstances.

**Answer**: This third-party defendant lacks sufficient knowledge or information to admit or deny the allegations in this paragraph.

## JURY DEMAND

Counter-Plaintiffs/Third Party Plaintiffs demand a trial by jury on all matters so triable.

**Answer**: The allegations of this paragraph do not require a response. If a response is deemed to be required, this third-party defendant acknowledges third-party plaintiffs' right to a jury trial but denies that Plaintiff's claims against this third-party defendant merit a jury trial.

## AFFIRMATIVE DEFENSES

And now, having responded to the allegations in the Third-Party Complaint against this third-party defendant, paragraph by paragraph, and having denied all liability in the premises, this third-party defendant raises the following special and affirmative matters:

## FIRST AFFIRMATIVE DEFENSE

Any and all allegations in the third-party complaint not expressly admitted are hereby denied.

## SECOND AFFIRMATIVE DEFENSE

The allegations in the Third-Party Complaint fail to state a claim against this third-party defendant upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

The subject non-compete agreement is unreasonable in its interval of restriction and geographic scope and, therefore, unenforceable.

## FOURTH AFFIRMATIVE DEFENSE

The subject non-compete agreement is substantively and procedurally unconscionable.

## FIFTH AFFIRMATIVE DEFENSE

The material terms of the subject non-compete agreement are not sufficiently definite and, therefore, the agreement is invalid.

## SIXTH AFFIRMATIVE DEFENSE

The subject non-compete agreement is void as against public policy.

## SEVENTH AFFIRMATIVE DEFENSE

Third-party Plaintiff's claims for specific performance and injunctive relief are moot.

## EIGHTH AFFIRMATIVE DEFENSE

Damages, if any, which third-party plaintiffs could have mitigated through reasonable efforts, and did not, are not recoverable.

## NINTH AFFIRMATIVE DEFENSE

In the unlikely event this third-party defendant is found liable to third-party plaintiffs in this action, he is entitled to set-off or credit for amounts promised to third-party defendant and/or earned by third-party defendant and not paid by third-party plaintiffs during the course of third-party defendant's employ with Think Webstore.

## TENTH AFFIRMATIVE DEFENSE

To the extent third-party plaintiffs have received any payment from any individual or entity as compensation for damages alleged in the Third-Party Complaint, this third-party defendant specifically pleads the doctrines of mitigation, accord and satisfaction, offset, waiver and release.

## ELEVENTH AFFIRMATIVE DEFENSE

The sole proximate cause of third-party plaintiffs' damages, if any, was the negligence or other fault-based acts of third-party plaintiffs and/or other individuals and/or entities for whom this third-party defendant cannot be held liable.

## TWELFTH AFFIRMATIVE DEFENSE

The negligence or other fault-based acts of the third-party plaintiffs and/or other individuals or entities for whom this third-party defendant is not liable were proximate contributing causes to third-party plaintiffs' damages, if any, and fault should be apportioned according to Mississippi's law of comparative/contributory fault, Miss. Code § 85-5-7, and § 11-7-15.

## THIRTEENTH AFFIRMATIVE DEFENSE

This third-party defendant asserts and pleads all applicable limits and caps on recoverable damages as set forth in Miss. Code Ann. § 11-1-60.

## FOURTEENTH AFFIRMATIVE DEFENSE

The Third-Party Complaint fails to state a claim against this third-party defendant upon which relief can be granted for unjust enrichment.

## FIFTEENTH AFFIRMATIVE DEFENSE

Third-party plaintiffs' claims against this third-party defendant are barred by the doctrines of unclean hands, acquiescence, laches, estoppel and waiver.

## SIXTEENTH AFFIRMATIVE DEFENSE

This third-party defendant invokes all rights, defenses and benefits available to it under MISS. CODE ANN. § 11-1-65.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Although denying third-party plaintiffs are entitled to punitive damages, or any relief whatsoever against this third-party defendant, to the extent punitive damages are sought, this third-party defendant would affirmatively plead that:

(1)     An award of punitive damages in this civil action would amount to a depravation of property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 14 of the Mississippi Constitution;

(2)     Any award of punitive damages in this civil action would violate the due process provision of the Fifth and Fourteenth Amendments to the United States Constitution and Section 14 of the Mississippi Constitution;

(3)     The criteria used for determining whether and in what amount punitive damages may be awarded are impermissibly vague, imprecise and inconsistent and therefore in violation of the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution;

(4)     An award of punitive damages in this civil action would amount of an excessive fine in violation of the Eighth Amendment to the United States Constitution and of Section 28 of the Mississippi Constitution;

(5)     An award of punitive damages in this civil action would violate the equal protection provisions of the Fourteenth Amendment in that such a sanction is discriminatory and arbitrary in penalizing this third-party defendant on the basis of assets;

(6)     To the extent that this third-party defendant is subjected to a criminal sanction through punitive damages, the burden of proof required to impose the same should be proved "beyond a reasonable doubt," and punitive damages should not be awarded without affording this third-party defendant the full range of criminal procedural safeguards afforded by the Fourth, Fifth and Sixth Amendments to the United States Constitution;

(7)     An award of punitive damages would violate Article 1, Section X of the United States Constitution;

(8)　　The award of punitive damages in this civil action would violate similar and related provisions, as noted above, of the Constitution of the State of Mississippi.

## EIGHTEENTH AFFIRMATIVE DEFENSE

With respect to third-party plaintiffs' demand for punitive damages, this third-party defendant specifically incorporates by reference any and all standards of limitation regarding the determination and/or enforceability of punitive damage awards which arose in the decisions of *BMW of North America v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); and *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

## NINETEENTH AFFIRMATIVE DEFENSE

This third-party defendant hereby gives notice that he intends to rely on such other and further defenses that may become available or apparent during discovery in this action and reserves the right to amend his answer to assert any such defenses.

Dated: September 23, 2022

Respectfully Submitted,

**MATTHEW JACKSON**

By: *s/ Michael R. Kelly*

Robert S. Addison – MS Bar # 1152
*robert@thompsonaddison.com*
W. Matthew Thompson – MS Bar # 101901
*matthew@thompsonaddison.com*
Michael R. Kelly - MS Bar # 103547
*michael@thompsonaddison.com*
Thompson Addison, pllc
2060 Main Street
Madison, MS 39110
Phone: 601.850.8000
Fax: 601.499.5219


## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2022, I electronically filed the

foregoing motion with the Clerk of the Court using the ECF system which sent

notification of such filing to all counsel of record.


*s/ Michael R. Kelly*